ANTONIE SHANLE, APPELLANT, V. HENRY BUSCH ET AL., APPELLEES.

280 N. W. 174

FILED JUNE 10, 1938. No. 30378.

A. R. Oleson, for appellant.

Fay H. Pollock, contra.

Heard before GOSS, C. J., ROSE, DAY, PAINE, CARTER and MESSMORE, JJ., and BLACKLEDGE, District Judge.

PAINE, J.

The plaintiff brings an action in equity for an accounting of the amount alleged to be due her under a lien upon

real estate, and prays that the land be sold and her lien satisfied. The defense is that she had executed a full release of her lien before a notary public, and the court in its decree found against the plaintiff, from which finding she appeals.

Henry Busch, Sr., of Howells, Colfax county, Nebraska, died testate in 1925, and in his last will and testament he devised various tracts of real estate to each of his sons, Luey, Charley, Henry, Frank, William, and Herman, and then provided for certain liens upon land or funds to be raised from the lands devised to the above sons to pay to his son John $6,000, to his daughter Theresa $6,000, to his daughter Lena $6,000, to his daughter Antonie $6,000, and $6,000 to his son Albert.

This is simply a very brief statement of the provisions of the will for these children, as there are other bequests and sundry provisions which are omitted from this statement. In this action we are only concerned with the $6,000 bequest made to his daughter Antonie, which was combined with the devise to his son Henry, and found in the fourth paragraph of the will, exhibit No. 5, and reads as follows:

"I give, devise and bequeath to my son Henry Busch the northwest quarter of section number thirteen, township number twenty-one north, range number three east of 6th P. M., except the west half of the southwest quarter of said northwest quarter, subject to the condition that he pay the note of $6,000 which I owe to my son Frank Busch at the present time, or if by the time of my death I have paid said note and have borrowed the money elsewhere he is then to pay $6,000 of the indebtedness that I may have incurred since this date, and upon the further condition that he and his wife, make and deliver to my daughter Antonie Shanle a valid note and mortgage for $6,000, due seven years after date of my death, bearing interest at the rate of 5% payable annually, said mortgage to cover the land hereby given to him subject to no indebtedness exceeding $6,000. And if said mortgage is given subject to

any other lien or mortgage against said land (not exceeding $6,000 as stated) and he finds it necessary to extend or renew such first lien or mortgage, said Antonie Shanle is to release the second mortgage held by her with the understanding that said Henry Busch and his wife make and deliver to her a new second mortgage on same land subject to no more other lien or mortgage than said $6,000, said new mortgage to be due at the same date at which the old mortgage would have fallen due and to be on the same terms and rate. However, if said Henry Busch should prefer to pay said amount of $6,000 in cash instead of giving said second mortgage, he may do so, and he is to have the privilege of paying or reducing said mortgage at any time and not continue to pay interest on the amount thus paid. Said above described land is given to my said son Henry Busch upon the further condition that he pay the sum of $7,750 into a fund which is to be divided amongst some of my other children as below provided."

Henry Busch testified that he gave his sister Antonie a note for $6,000 to pay off the provision in his father's will. The note is exhibit No. 3, and is dated February 1, 1927, for $6,000, for five years, at 5 per cent. interest, and the back of the note has indorsed thereon some six payments of interest, and an indorsement of $2,000 on the principal under date of March 28, 1927. Exhibit No. 2 is the release signed by Antonie Shanle, which sets out that she is one of the heirs mentioned in the last will of Henry Busch, deceased, and is the one to whom Henry Busch (Jr.), another heir, was to execute and deliver one mortgage for $6,000, and she acknowledges that she has received from him a note for $6,000 in lieu of the $6,000 mortgage mentioned in said last will and also in the decree of the probate of said estate, and that no mortgage is therefore due her, as provided in said last will and decree of Henry Busch, deceased, and this release was subscribed and sworn to before J. R. Kosta, a notary public, on February 3, 1927. Mr. Kosta testified that this instrument was prepared and mailed to him by Mr. Wertz, of Schuyler, who was attorney

for the estate, and that Mrs. Shanle came to his bank and signed it before him as notary public.

It appears that against this farm of Henry Busch a mortgage of $11,000 was given to Fred Taylor on February 29, 1932, and the plaintiff prays in her petition that the balance due her of $4,850 with 5 per cent. interest be decreed to be a first lien against the land of Henry Busch, and prior to the mortgage given to Fred Taylor, which shall be decreed to be subjected to the amount due her on her lien.

Answers and cross-petitions were filed by Henry Busch and Fred Taylor, who seeks a foreclosure of his mortgage of $11,000. Practically the only question at issue in the trial of this case was whether the release signed by the plaintiff was a valid and good release of her right to have a mortgage lien against the land of her brother Henry. The trial court dismissed the plaintiff's petition, and gave a decree of foreclosure upon the $11,000 mortgage of Fred Taylor.

The asignment of errors set out that the court erred in finding that exhibit No. 2 constituted a release of the lien of the plaintiff under the will of her father; that the court erred in dismissing the action of the plaintiff; and, third, that the decree is contrary to, and not suported by, the competent evidence in the case. The plaintiff supports these errors by citing many authorities holding that a release of an existing right cannot be sustained when it is made without consideration or by misrepresentation of its contents and purport, whether innocent or otherwise.

The plaintiff testified that her brother Henry made a payment to her of $2,000, and paid $200 interest each year until March 16, 1932, and that in March, 1936, he paid her $350. On cross-examination she testified that she was 56 years of age, and that her husband died in 1936, and that she had been accustomed to transacting business before his death. She admitted that she could read and write English, and admitted that it was her signature on exhibit No. 2, the release in this case, but she said that she could

not remember signing that paper or any paper like it. She remembered Mr. J. R. Kosta, and knew that he was a notary public and a bank officer, and said that she had transacted business with Mr. Kosta, but that she had never seen the $6,000 note given to her by Henry Busch until last October, and that she did not remember signing exhibit No. 2 at all; that she never directed any one to credit the $2,000 on the back of the note which she received, or to credit any interest payments thereon. She admitted that she had left the note in the bank, and that she had received all the payments of money indorsed on the back of the note.

J. R. Kosta testified that, at the time she signed the release, exhibit No. 2, he had called her attention to the note that he had there in the bank, and that he wanted her to sign this receipt, exhibit No. 2, for the note, and she signed it; that L. R. Coufal, president of the Howells State Bank, obtained a mortgage from Henry Busch on this land about April 1, 1927, for $11,000; that exhibit No. 8, the $11,000 mortgage to Fred Taylor, is dated February 29, 1932.

Mr. Coufal identified an agreement made June 14, 1934, being exhibit No. 9, in which, in arranging to borrow $21,000 from the Federal Land Bank of Omaha, Rudolph Shanle and wife, the plaintiff, Antonie Shanle, assigned by such exhibit No. 9 a $1,000 interest in the debt due from her brother Henry, represented by the note of $6,000, with payment of $2,000 thereon, and which exhibit sets out that her lien against the land was released to give Henry Busch an opportunity to refinance the mortgage against the land, and therefore it appears from this exhibit No. 9 that she had used the note of her brother Henry as collateral security for $1,000.

In the examination of the plaintiff, it does not appear from her answers that she claims to have been under any mental incompetency, or that she was suffering any physical disability, nor does she charge any misrepresentations in regard to the terms of such release, and frankly admits

that her signature appears upon this release of her lien, exhibit No. 2, but testifies that she has no recollection whatever of signing the instrument.

It cannot be seriously contended that Henry Busch could not legally settle the lien charged against his land in the will of his father by paying his sister the $6,000 in cash, and if she was willing to accept his promissory note for $6,000 in lieu of cash and release her lien against his land, then in the absence of misrepresentations or fraud it would bind the plaintiff, for a charge on real estate for a bequest may be paid, released, and satisfied by the agreement of the parties to accept a certain note in lieu of cash. *Very v. Levy,* 13 How. *345, 14 L. Ed. 173; 41 C. J. 791; *De Coo v. Woodworth,* 96 Mich. 362, 55 N. W. 987.

In the Nebraska case of *Pasewalk v. Bollman,* 29 Neb. 519, 45 N. W. 780, it was held that, if a plaintiff accepts county warrants and promissory notes in satisfaction of a judgment, it constitutes a good payment of such judgment.

In 6 R. C. L. 835, sec. 225, it is said, generally, that courts will hold parties bound to their contracts if the intention of the parties can be arrived at from the contract; that the courts will not make an attempt to ascertain the actual mental processes of the parties, for the law presumes that parties understand the import of their contract, and intended to be bound thereby.

It seems to this court that, when a party of mature age, able to read and write, being somewhat experienced in business transactions, and having the opportunity to read a release, executes the same before a notary public, she is bound thereby, when her defense is that she does not remember the transaction at all.

Finding no prejudicial error in the record, the decree of the trial judge is hereby

AFFIRMED.