DAN J. KRAMER, APPELLANT, V. EAGLE EYE HOME
INSPECTIONS, INC., ET AL., APPELLEES.
716 N.W.2d 749

Filed April 25, 2006. No. A-04-1253.

Douglas W. Ruge II for appellant.

John S. Lingo, P.C., L.L.O., for appellee Eagle Eye Home Inspections, Inc.

Brandie M. Fowler for appellee Daniel Surdell.

SIEVERS, CARLSON, and MOORE, Judges.

SIEVERS, Judge.

Dan J. Kramer appeals the decision of the district court for Douglas County granting the appellees' motions for summary judgment and dismissing the action.

## I. FACTUAL BACKGROUND

Kramer purchased a home from Edward J. Surdell and Ann M. Surdell in May 2003. The home was found to have termite damage. The key components in this case are when the termite damage was discovered and Kramer's knowledge of the problem.

On May 12, 2004, Kramer filed a complaint against Eagle Eye Home Inspections, Inc. (Eagle Eye); Daniel Surdell, the personal representative of the estate of Edward J. Surdell; and Ann M. Surdell. (For simplicity, we will refer to the Surdells and the personal representative alike as "the Sellers.") Kramer alleged four causes of action against the Sellers: (1) violation of Neb. Rev. Stat. § 76-2,120 (Reissue 2003), (2) common-law fraudulent misrepresentation, (3) negligent misrepresentation, and (4) fraudulent concealment. Kramer also alleged one cause of action, negligence and breach of contract, against Eagle Eye. Kramer alleged damages of $14,641.15. Attached to his complaint as exhibits were a home purchase agreement dated May 6, 2003, and a "Seller Property Condition Disclosure Statement."

Eagle Eye filed an "Answer, Affirmative Defenses and Cross-Claim" alleging the following affirmative defenses: (1) "[A]ny problems or defects concerning the property in question were disclosed to [Kramer] either in writing or orally by the Sellers"; (2) "[Kramer], upon reasonable examination or inspection as a lay person buyer and/or upon additional destructive testing, removal or probing after receipt of the Seller's Disclosure Statement and [Eagle Eye's] Inspection Report[,] should have noticed and discovered any damage caused by termites or any other wood-destroying insects"; (3) "any of the damages complained of in [Kramer's] Complaint were located in areas [of] which [Eagle Eye's] Inspection Report made mention [as] problem areas to the extent that they were discoverable without destructive testing, removal or probing per the contract between [Eagle Eye] and [Kramer]"; (4) "any damage suffered by [Kramer] was solely caused by [the Sellers]"; (5) "pursuant to the written [inspection agreement] between [Eagle Eye] and [Kramer] dated May 12, 2003, any damages suffered by [Kramer] are limited to the amount paid for the home inspection, $265.00"; and (6) "this matter is (pursuant to the written [inspection agreement] between [Eagle Eye] and [Kramer] dated May 12, 2003) governed by a

mandatory arbitration clause and . . . written demand for such arbitration was not made within one year of the date of the agreement." Eagle Eye therefore requested that the court enter an order dismissing the suit against it with prejudice. In its cross-claim against the Sellers, Eagle Eye alleged that

> should any damages be awarded in favor of [Kramer] against [Eagle Eye], . . . any such damages were caused by the negligent failure to disclose or intentional misrepresentation by one or both of the [Sellers] and that any judgment so rendered should be entered in favor of Eagle Eye and against the [Sellers].

On July 23, 2004, the Sellers filed a motion for summary judgment claiming that there was no genuine issue as to any material fact and that they were entitled to judgment as a matter of law. In support of their motion, the Sellers stated:

> 1. . . . Kramer elected to have a whole house inspection and termite inspection prior to purchasing the Surdell residence.
>
> 2. Both inspections revealed damage due to termites, putting [Kramer] on notice of said damage and allowing him to rescind the purchase agreement if he so chose.
>
> 3. [Kramer] elected to have the damage treated rather than rescind the agreement.
>
> 4. Due to the fact that the damage was disclosed to [Kramer], and [Kramer] elected to close on the purchase of the home nonetheless, [Kramer] has waived his right to now claim damages against the Seller[s].
>
> 5. [Kramer] acknowledged upon receipt of the Seller's Property Disclosure Statement that said statement contained no warranties of any kind and was not a substitute for home inspections and/or termite inspections. These later inspections revealed the damage that [Kramer] now complains of, in an amount of time that would have allowed [Kramer] to rescind or renegotiate his agreement with the Sellers. [Kramer] has failed to mitigate his damages in this regard and now should be estopped from attempting to do so.

On July 27, 2004, Eagle Eye filed a motion for summary judgment claiming that there was no genuine issue as to any material fact and that it was entitled to judgment as a matter of

law. In its motion, Eagle Eye stated that it "relie[d] upon each of the denials and affirmative defenses raised in its Answer, Affirmative Defenses and Cross-Claim filed herein."

A hearing on the motions for summary judgment was held on September 8, 2004. At the hearing on the motions for summary judgment, the Sellers offered into evidence a "Settlement Statement" dated May 23, 2003, and signed by Kramer; an unsigned "Wood Destroying Insect Infestation Inspection Report" issued by "TNT Termite Inspections, Inc." (TNT); the above-mentioned property condition disclosure statement, signed by the Sellers on April 1, 2003, and by Kramer on May 6; and TNT's "Termite Service Plan" dated May 20, 2003, signed by a TNT representative and listing Kramer as the "purchaser," but not signed by Kramer. The settlement statement and disclosure statement were received into evidence. TNT's inspection report and termite service plan were conditionally received into evidence—pending Kramer's acknowledgment that he had received them prior to the hearing (Kramer was not present at the hearing, and his counsel was unable to reach him). We note that the record does not reflect whether such acknowledgment was received, but the court's order seems to rely on these exhibits, about which no complaint is made. We also observe that Kramer's affidavit does acknowledge his receiving an inspection report from TNT, and the above-mentioned settlement statement signed by Kramer (and by an agent of "Security Land Title & Escrow") on May 23, 2003, shows that Kramer received a reduction of $1,348.20 in the sale price of the home as a result of "Termite Treatment" by TNT.

Eagle Eye offered into evidence an affidavit of Eagle Eye's owner/inspector, with an inspection agreement between Eagle Eye and Kramer and an Eagle Eye inspection report attached as exhibits. These documents were received into evidence, with the exception of the affidavit's paragraph 5, which was not received. In the affidavit, the affiant stated: (1) He is the owner of and sole shareholder in Eagle Eye; (2) he personally inspected the home at issue on May 12, 2003; (3) Kramer personally signed page 2 of the inspection agreement on that same date in the owner/inspector's presence; (4) the inspection agreement specifically excludes any inspection for termite infestation but does state that

if any termite damage is observed, it will be noted in the inspection report; and (5) several abnormal items both inside and outside of the home are noted on the inspection report, and each item was brought to Kramer's attention at a postinspection walkthrough on May 12, 2003.

Kramer offered into evidence the complaint and attachments he had filed on May 12, 2004 (the attachments being the home purchase agreement and property condition disclosure statement), along with his affidavit. The complaint and attachments were received into evidence, and the affidavit was also received, with the exception of its paragraph 13. In the affidavit, Kramer stated: (1) In connection with entering into the purchase agreement, he did review and rely upon the property condition disclosure statement; (2) the disclosure statement indicated that there was no damage to the real property or structures due to wind, fire, wood-destroying insects, or rodents; (3) he is not a property inspector and, prior to closing on the purchase of the property, did not have any special knowledge of termites which would make him aware that termites were on the property; (4) after closing on the property, he discovered material damage to the property including walls and siding which were so damaged that "you could put your finger through" them; (5) Eagle Eye did a "whole-house inspection" on the property prior to closing, and Kramer relied on the inspection; (6) Eagle Eye inspected the interior walls of the property and failed to notice or inform Kramer of extensive termite damage or any termite damage to those walls, noting simply some areas of waterstains and paint peeling which "appeared serviceable"; (7) after the discovery of extensive termite damage on the property, Eagle Eye came back to the property, and when Kramer pointed out the areas of termite damage, the inspector admitted that he had " 'missed' " the termite damage, stated that "it was his 'fault,' " and encouraged Kramer to sue (to recover from Eagle Eye's insurance); (8) "[t]he inspection report I received from TNT did not disclose any damage from wood destroying insects"; and (9) "I had no idea of termite damage or any significant damage to the Property until after closing on the purchase of the Property."

The court then entered an order on October 6, 2004, granting both Eagle Eye's and the Sellers' motions for summary judgment.

In granting Eagle Eye's motion, the district court found: (1) Eagle Eye inspected the home on May 12, 2003, and the results of this inspection were provided to Kramer; (2) the first paragraph of the inspection agreement specifically excludes inspection for termite infestation—Eagle Eye was to note any termite damage observed during the inspection, and none was noted; (3) the inspection agreement entered into by Kramer and Eagle Eye is " 'essentially visual,' " specifically excluding latent and concealed defects; (4) Eagle Eye performed as it was required to under the inspection agreement; (5) Kramer and Eagle Eye were subject to a mandatory arbitration clause requiring that written demand for arbitration be made within 1 year from the date of the inspection agreement, that is, by May 12, 2004; and (5) Kramer failed to make timely written demand for arbitration, thereby waiving his claims against Eagle Eye.

In granting the Sellers' motion, the district court found: (1) the Sellers certified completion of the property condition disclosure statement on April 1, 2003; (2) Kramer acknowledged receipt of the disclosure statement on the following May 6; (3) the disclosure statement indicates that the home had previously been treated for wood-destroying insects or rodents; (4) Kramer, pursuant to the purchase agreement, hired TNT to perform a wood-destroying insect infestation inspection of the property, and the inspection occurred on May 20; (5) pursuant to the inspection, TNT reported to Kramer that it had observed visual evidence of active wood-destroying insect infestation on the premises and recommended treatment " 'at this time' "; (6) Kramer then agreed to TNT's providing "full termite treatment" on May 20; (7) the Sellers, pursuant to the purchase agreement, had $1,348.20 deducted from the proceeds at settlement on May 23 to pay for said termite treatment; (8) Kramer closed on the sale of the home on May 23 with specific knowledge that the premises had an active wood-destroying insect infestation, having been clearly put on notice of the infestation prior to the date of closing; and (9) the exhibits received by the court on the Sellers' motion for summary judgment did not in any way support Kramer's claims of fraudulent misrepresentation, negligent misrepresentation, statutory violations, or fraudulent concealment. Kramer timely appeals the order of the district court.

## II. ASSIGNMENTS OF ERROR

Kramer asserts that the district court erred in (1) finding that there was no evidence to support his position; (2) awarding summary judgment in favor of the Sellers by finding that Kramer had knowledge that the property had been treated for termites; (3) considering the oral arguments of Eagle Eye at the hearing for summary judgment, as the motion and supporting documentation prior to the hearing were insufficient to put Kramer on notice that the inspection agreement's arbitration clause would be an issue in the motion's resolution; (4) ruling that he waived his right to arbitration by allegedly failing to make written demand for arbitration; and (5) ruling that the arbitration clause was enforceable.

In addition, Kramer argues, but does not specifically assign as error, that (1) the court committed error in finding that Eagle Eye performed as it was required under the inspection agreement and (2) Eagle Eye waived its right to assert arbitration because it answered the merits of the case and filed a third-party complaint against the Sellers. However, we do not address the merits of these arguments. "To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party assigning the error." *Brunk v. Nebraska State Racing Comm.*, 270 Neb. 186, 197, 700 N.W.2d 594, 604 (2005).

## III. STANDARD OF REVIEW

■ Summary judgment is proper when the pleadings and the evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Richards v. Meeske*, 268 Neb. 901, 689 N.W.2d 337 (2004).

■ In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Id.*

## IV. ANALYSIS

■ The party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that it is entitled to

judgment as a matter of law. *New Tek Mfg. v. Beehner*, 270 Neb. 264, 702 N.W.2d 336 (2005). A party moving for summary judgment must make a prima facie case by producing enough evidence to demonstrate that the movant is entitled to judgment if the evidence were uncontroverted at trial. *Id.* Once the moving party makes a prima facie case, the burden to produce evidence, showing the existence of a material issue of fact that prevents judgment as a matter of law, shifts to the party opposing the motion. *Id.*

## 1. SELLERS

At the hearing on the motion for summary judgment, the Sellers offered into evidence, as noted above, the settlement statement (signed by Kramer), TNT's inspection report (not signed), the property condition disclosure statement (signed by the Sellers and by Kramer), and TNT's termite service plan (signed by TNT and listing Kramer as the "purchaser," but not signed by Kramer). The property condition disclosure statement indicates that the Sellers were not occupying the real property, that there had not been damage due to wood-destroying insects, and that there had been treatment for wood-destroying insects. Furthermore, the disclaimer on the disclosure statement says that the statement was a disclosure of the home's condition as known by the Sellers, was not a warranty of any kind by the Sellers, and should not be accepted as a substitute for any inspection that the Sellers may have wished to obtain. TNT's inspection report and termite service plan, together with the settlement statement, show that (1) Kramer hired TNT to do a termite inspection of the home, (2) TNT found visible evidence of termites, (3) TNT performed a full termite treatment on the home, and (4) Kramer received a credit against the sale price of the home to pay for the termite treatment by TNT.

The Sellers produced a prima facie case demonstrating that they were entitled to judgment if the evidence were uncontroverted at trial. Because the Sellers made a prima facie case, the burden to produce evidence, showing the existence of a material issue of fact that prevents judgment as a matter of law, shifted to Kramer. See *New Tek Mfg. v. Beehner, supra.* Kramer offered into evidence a copy of his complaint, with the purchase agreement and the property condition disclosure statement attached, and his

affidavit. The contents of the property condition disclosure statement were discussed above. The purchase agreement shows that Kramer agreed to pay the cost of a wood-destroying insect inspection of the property, that the Sellers agreed to pay for any treatment or repair work found necessary because of any wood-destroying insects, and that Kramer agreed to accept the treated property upon completion of any such repairs. Kramer's affidavit states in relevant part that he relied on the property condition disclosure statement, which said there was no damage to the real property due to wood-destroying insects, and that after closing on the property, he discovered such damage to the property.

(a) No Evidence to Support Kramer's Position

Kramer argues that the court committed error in ruling that the exhibits received on the Sellers' motion for summary judgment do not in any way support Kramer's claims for fraudulent misrepresentation, negligent misrepresentation, statutory violation, or fraudulent concealment. However, Kramer does not specifically argue with respect to "statutory violation," and therefore, we do not address such claim. See *Brunk v. Nebraska State Racing Comm.*, 270 Neb. 186, 700 N.W.2d 594 (2005).

*(i) Fraudulent Misrepresentation*

■ In order to recover on an action for fraudulent misrepresentation, Kramer must show

(1) that a representation was made; (2) that the representation was false; (3) that when made, the representation was known to be false or made recklessly without knowledge of its truth and as a positive assertion; (4) that it was made with the intention that it should be relied upon; (5) that [he] reasonably did so rely; and (6) that he . . . suffered damage as a result.

See *Eicher v. Mid America Fin. Invest. Corp.*, 270 Neb. 370, 378, 702 N.W.2d 792, 803 (2005). See, also, *Cao v. Nguyen*, 258 Neb. 1027, 607 N.W.2d 528 (2000). The Sellers did indicate on the property condition disclosure statement that there had not been damage due to wood-destroying insects, but that there had been treatment for wood-destroying insects. The problem for Kramer is that he cannot show that he reasonably relied on the disclosure statement and that he suffered damage as a result, because Kramer

had a termite inspection and treatment done on the home prior to closing and received a credit on the sale price for such treatment. Therefore, Kramer cannot meet the requirement of reasonable reliance on the Sellers' representation because of the action he indisputably took, which action conclusively negates any claim of reasonable reliance on the seller's representations. Thus, this theory of recovery is proper for summary judgment.

### (ii) Negligent Misrepresentation

"Liability for negligent misrepresentation is based upon the failure of the actor to exercise reasonable care or competence in supplying correct information." *Washington Mut. Bank v. Advanced Clearing, Inc.*, 267 Neb. 951, 954, 679 N.W.2d 207, 210 (2004).

To recover on a negligent misrepresentation claim, one must demonstrate, inter alia, that " '[o]ne who, in the course of his business, profession, or employment, or in any other transaction in which he has a pecuniary interest, *supplies false information* for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.' "

(Emphasis supplied.) (Emphasis in original.) *Agri Affiliates, Inc. v. Bones*, 265 Neb. 798, 805, 660 N.W.2d 168, 175 (2003), quoting *Gibb v. Citicorp Mortgage, Inc.*, 246 Neb. 355, 518 N.W.2d 910 (1994).

Again, Kramer did not incur an actionable loss caused by justifiable reliance on the Sellers' disclosure statement, because he had a termite inspection and treatment done on the home prior to closing and received a credit on the sale price for such treatment. Therefore, Kramer, as a matter of law, cannot prove all of the elements necessary for negligent misrepresentation. Thus, this theory is properly dismissed on the Sellers' motion for summary judgment.

### (iii) Fraudulent Concealment

To prove fraudulent concealment, a plaintiff must show that (1) the defendant had a duty to disclose a material fact; (2) the defendant, with knowledge of the material fact,

concealed the fact; (3) the material fact was not within the plaintiff's reasonably diligent attention, observation, and judgment; (4) the defendant concealed the fact with the intention that the plaintiff act in response to the concealment or suppression; (5) the plaintiff, reasonably relying on the fact or facts as the plaintiff believed them to be as the result of the concealment, acted or withheld action; and (6) the plaintiff was damaged by the plaintiff's action or inaction in response to the concealment.

*Ord v. AmFirst Invest. Servs.*, 14 Neb. App. 97, 107, 704 N.W.2d 796, 804 (2005). In *Kracl v. Loseke*, 236 Neb. 290, 461 N.W.2d 67 (1990), the Nebraska Supreme Court found that the buyers had proved their case of fraud against the sellers when they showed that the sellers made it impossible to detect termite damage and weakened floor joists when they fully covered the basement ceiling with Sheetrock, leaving no exposed wood. No such obvious concealment occurred in the instant case.

█ Section 76-2,120(2) provides that "[e]ach seller of residential real property located in Nebraska shall provide the purchaser with a written disclosure statement of the real property's condition." In the instant case, the Sellers did complete the property condition disclosure statement (specifically a "Nebraska Real Estate Commission Seller Property Condition Disclosure Statement [for] Residential Real Property"), checked the box on it indicating that there had not been damage to the property due to wood-destroying insects, and also checked the box on it indicating that there had been treatment for wood-destroying insects or rodents. Kramer signed the disclosure statement, acknowledging receipt of the same. The purchase agreement between Kramer and the Sellers states:

> **20. Wood Infestation:** Purchaser (Seller, in the case of a new V.A. loan) agrees to pay the cost of a wood destroying insect inspection of the building, attached and detached structures, and Seller agrees to pay for any treatment or repair work found necessary for issuance of a termite warranty and/or treatment of any wood destroying insects. Purchaser agrees to accept the treated Property upon completion of repairs for material damages from wood destroying insects.

Furthermore, the evidence shows that prior to signing the settlement statement on May 23, 2003, Kramer had a termite inspection and treatment done on the residence by TNT and received a $1,348.20 reduction in the property's purchase price to cover the costs of said inspection and treatment. Even viewing the evidence in the light most favorable to Kramer, there is no evidence that the Sellers knew of termite damage and concealed the presence of such damage, and as discussed above, the element of Kramer's lack of knowledge is absent as well. Summary judgment was properly granted on this theory also.

### (b) Kramer's Knowledge of Termite Treatment

Kramer argues that the district court erred in awarding summary judgment to the Sellers by finding that Kramer had knowledge that the property was treated for termites. The property condition disclosure statement did indicate that the property was treated for termites, and again, we point to the facts that Kramer hired TNT to inspect the home for termite infestation or damage and that TNT was also hired to treat the home for termites—as evidenced by the line on the settlement statement showing the reduction in sale price to cover the costs of such treatment, as well as by TNT's inspection report and termite service plan. This seems an appropriate juncture to point out that if Kramer was damaged, it was when he closed on the sale and became the owner of the home. Indeed, before Kramer closed on the purchase, the Sellers told him of prior termite treatment; he arranged his own termite inspection, which found termites; and he had the home treated at the Sellers' cost—facts which all necessarily preclude the viability of the various theories advanced against the Sellers. Therefore, Kramer has not shown the existence of a material fact which would prevent summary judgment. Thus, summary judgment in favor of the Sellers was proper.

### 2. EAGLE EYE

At the hearing on the motion for summary judgment, Eagle Eye offered into evidence the affidavit of Eagle Eye's owner/inspector, with the inspection agreement and inspection report attached. The inspection agreement specifically excludes any inspection for termite infestation and includes an arbitration clause providing that Kramer had 1 year from the date of the agreement

to make written demand for arbitration before any claims stood waived.

Eagle Eye clearly produced enough evidence to demonstrate that it was entitled to judgment as a matter of law if the evidence were uncontroverted at trial. Because Eagle Eye made a prima facie case, the burden to produce evidence, showing the existence of a material issue of fact that prevents judgment as a matter of law, shifted to Kramer. See *New Tek Mfg. v. Beehner*, 270 Neb. 264, 702 N.W.2d 336 (2005). Kramer offered into evidence a copy of his complaint and his affidavit. Kramer's affidavit states in relevant part that Eagle Eye did a "whole-house inspection" on the property prior to closing, that Kramer relied on the inspection, and that Eagle Eye had inspected the interior walls of the property but had failed to notice or inform Kramer of extensive termite damage. It further states that after the discovery of extensive termite damage on the property, the inspector came back to the property, and that when Kramer pointed out the areas of termite damage, the inspector admitted that he had "missed" the termite damage, stated that "it was his 'fault,'" and encouraged Kramer to sue (to recover from Eagle Eye's insurance).

### (a) Notice That Arbitration Clause Was at Issue

Kramer argues that the district court erred in considering the oral arguments of Eagle Eye at the hearing for summary judgment, as the motion and supporting documentation prior to the hearing were insufficient to put Kramer on notice that the inspection agreement's arbitration clause would be an issue in the resolution of Eagle Eye's motion for summary judgment. In its motion for summary judgment—filed on July 27, 2004—Eagle Eye stated that it "relie[d] upon each of the denials and affirmative defenses raised in its Answer, Affirmative Defenses and Cross-Claim filed [on June 11] herein." And, in its affirmative defenses, Eagle Eye stated, "[t]his matter is (pursuant to the written [inspection agreement] between [Eagle Eye] and [Kramer] dated May 12, 2003) governed by a mandatory arbitration clause and . . . written demand for such arbitration was not made within one year of the date of the agreement." Therefore, Eagle Eye's motion for summary judgment specifically referenced and relied upon Eagle Eye's affirmative defense regarding the arbitration

clause, which defense was filed the previous month. Thus, the pleadings were clearly sufficient to put Kramer on notice that the arbitration clause was an issue in the case, as well as in the resolution of Eagle Eye's motion for summary judgment—assuming, without deciding, that notice of specific issues is required in advance in a summary judgment proceeding. This assignment of error is without merit.

### (b) Enforceability of Arbitration Clause

Kramer argues that the district court erred in ruling that the arbitration clause was enforceable.

### (i) Federal Arbitration Act

 Arbitration is purely a matter of contract, *Cornhusker Internat. Trucks v. Thomas Built Buses*, 263 Neb. 10, 637 N.W.2d 876 (2002), and "[t]he construction of a contract is a matter of law, in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determinations made by the court below," *id.* at 11, 637 N.W.2d at 878.

Kramer argues that Eagle Eye failed to make a prima facie case showing that the transaction at issue involved interstate commerce for the purpose of the federal Arbitration Act. Eagle Eye argues that Kramer misstated that "interstate" commerce must be affected. (Emphasis omitted.) Brief for appellee Eagle Eye at 6. Eagle Eye, citing *Cornhusker Internat. Trucks v. Thomas Built Buses, supra,* argues that "[a] binding arbitration clause in a standardized contract is valid in Nebraska so long as it affects commerce." Brief for appellee Eagle Eye at 6. However, Nebraska's Uniform Arbitration Act, discussed below, does not mention "commerce" at all. Additionally, there is no authority cited that the Uniform Arbitration Act is somehow preempted by the federal Arbitration Act, necessitating a showing of an effect on interstate commerce.

 In 1987, Nebraska enacted the Uniform Arbitration Act. See Neb. Rev. Stat. §§ 25-2601 to 25-2622 (Reissue 1995 & Cum. Supp. 2004). See, also, *State v. Nebraska Assn. of Pub. Employees*, 239 Neb. 653, 477 N.W.2d 577 (1991). Section 25-2602.01 states in part:

(b) A provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable, and irrevocable, except upon such grounds as exist at law or in equity for the revocation of any contract, if the provision is entered into voluntarily and willingly.

As a general rule, every person of mature age able to read and write, who has an opportunity to read an instrument, and executes the same is presumed to know the contents of the instrument signed and is estopped from denying the contents thereof. See, *Prudential Ins. Co. v. Holliday*, 191 Neb. 144, 214 N.W.2d 273 (1974); *Shanle v. Busch*, 134 Neb. 903, 280 N.W. 174 (1938); 28 Am. Jur. 2d *Estoppel and Waiver* § 66 (2000); 17A Am. Jur. 2d *Contracts* § 149 (2004). There was no evidence to warrant taking the instant factual situation as falling outside the scope of this rule. In short, there is no evidence that Kramer and Eagle Eye did not voluntarily and willingly enter into the arbitration clause of the inspection agreement. Kramer did not comply with the arbitration provisions of the contract, and thus, the trial court did not err in granting summary judgment to Eagle Eye on this basis; however, as explained below, the arbitration clause is not enforceable.

### (ii) Violation of Nebraska Statutory Law

Section 25-2602.02 states, "The following statement shall appear in capitalized, underlined type adjoining the signature block of any standardized agreement in which binding arbitration is the sole remedy for dispute resolution: THIS CONTRACT CONTAINS AN ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES." Nonetheless, the inspection agreement at issue reads:

> *In the event a dispute or claim should arise from the inspection or inspection report, it is agreed that this dispute or claim shall be resolved informally between the parties or by binding Arbitration under the "Construction Industry Arbitration Rules" of the American Arbitration Association, and use as a gauge of performance the "Standards-of-Practice" of the American Society of Home Inspectors (ASHI®).*

Therefore, on its face, the agreement does not comply with § 25-2602.02.

There is no previously decided case addressing the effect of such noncompliance, and Nebraska's Uniform Arbitration Act does not provide a remedy for such violation. It is well known that statutes which change or take away a common-law right are to be strictly construed. *Spear T Ranch v. Knaub*, 269 Neb. 177, 691 N.W.2d 116 (2005). The arbitration clause results in Kramer's giving up his common-law right to trial by a court or jury with the attendant evidentiary and procedural safeguards. And, while it is obviously the public policy of this state, via the Legislature's enactment of the Uniform Arbitration Act, that such rights can be surrendered in exchange for binding arbitration, we must construe such statutes strictly. In this instance, that necessarily means that the notice of the arbitration requirement must be in the words and style provided by the Legislature in § 25-2602.02—especially in light of the fact that the Legislature used the term "shall" in reference to such language in § 25-2602.02. Therefore, when a contract which attempts to establish binding arbitration as the sole remedy fails to strictly comply with § 25-2602.02, the arbitration clause is voidable and unenforceable. The inspection agreement's arbitration clause did not strictly comply with § 25-2602.02, and therefore, such clause is void and unenforceable. As a result, the arbitration clause is not a complete defense to this action against Eagle Eye.

Therefore, we turn to the merits of the grant of summary judgment to Eagle Eye. The inspection agreement clearly states:

> The inspection is essentially visual; it is based upon the experience and opinion of the inspector, and it is not meant to be technically exhaustive. Latent and concealed defects and deficiencies are excluded from this inspection. The home is not specifically inspected for termite infestation. However, if any termite damage is observed, it will be noted in the report.

Thus, Eagle Eye clearly produced enough evidence to demonstrate that it is entitled to judgment if the evidence were uncontroverted at trial. Because Eagle Eye made a prima facie case, the burden to produce evidence, showing the existence of a material

issue of fact that prevents judgment as a matter of law, shifted to Kramer. See *New Tek Mfg. v. Beehner*, 270 Neb. 264, 702 N.W.2d 336 (2005).

Kramer offered into evidence a copy of his complaint and his affidavit. Kramer's complaint alleged negligence and breach of contract as to Eagle Eye, and Kramer's affidavit states in relevant part:

> Subsequent to the discovery of extensive termite damage on the Property, the inspector came back to the Property. I pointed out the areas of termite damage. The inspector admitted that he had "missed" the termite damage [and] that it was his "fault" and informed me that I would have to sue him to get recovery. He encouraged me to sue him, and said that is what insurance is for.

This alleged statement by Eagle Eye's inspector—that he "missed" the damage and that "it was his 'fault' "—is an admission which we must view most favorably to Kramer, and when we do so, it is clear that there is sufficient evidence to show the existence of a material issue of fact that prevents judgment as a matter of law. See *New Tek Mfg. v. Beehner, supra*. Therefore, the award of summary judgment in favor of Eagle Eye was improper and is hereby reversed, and the cause as to Eagle Eye is remanded for further proceedings.

## V. CONCLUSION

For the reasons stated above, we find that Kramer did not produce evidence showing the existence of a material issue of fact that prevents judgment as a matter of law with respect to the Sellers, and therefore, the grant of summary judgment in favor of the Sellers is affirmed. The grant of summary judgment in favor of Eagle Eye is reversed, because the arbitration clause of the inspection agreement is unenforceable due to the absence of the statutorily required notice language and because there is evidence that Eagle Eye has admitted that it should have found the termite damage during its inspection. Accordingly, there are genuine issues of material fact for trial; the judgment in favor of Eagle Eye is hereby reversed, and the cause as to Eagle Eye is remanded for further proceedings.

AFFIRMED IN PART, AND IN PART REVERSED AND
REMANDED FOR FURTHER PROCEEDINGS.