preclude Golnick from presenting evidence relevant to how Callender's negligence caused Golnick's injuries.

We further conclude that the court's jury instructions either were correct or did not prejudice Golnick. Finally, we conclude that the court did not abuse its discretion in denying Golnick's request for juror contact information after the jurors completed their service. Because rule 606(2) prohibits evidence of the jurors' deliberations, the court did not err in denying Golnick's request to investigate the jurors' reasoning and thought processes.

AFFIRMED.

———————————

DAVID FIALA, LTD., A NEBRASKA CORPORATION, DOING BUSINESS AS FUTURESONE, APPELLEE, V. IAN HARRISON ET AL., APPELLEES, AND WILLIAM GROSS, APPELLANT.

___ N.W.2d ___

Filed March 20, 2015.    No. S-14-178.

1. **Arbitration and Award.** Arbitrability presents a question of law.
2. **Contracts.** The meaning of a contract and whether a contract is ambiguous are questions of law.
3. **Judgments: Appeal and Error.** When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court.
4. **Arbitration and Award: Federal Acts: Contracts.** If a contract containing an arbitration clause involves interstate commerce, the Federal Arbitration Act governs the contract.
5. **Contracts: States.** Contracts involving interstate commerce include contracts for services between parties of different states.
6. **Contracts.** In interpreting a contract, a court must first determine, as a matter of law, whether the contract is ambiguous.
7. **Contracts: Words and Phrases.** A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings.
8. **Contracts.** When a court has determined that ambiguity exists in a document, an interpretative meaning for the ambiguous word, phrase, or provision in the document is a question of fact for the fact finder.
9. **Contracts: Evidence.** If a contract is ambiguous, the meaning of the contract is a question of fact and a court may consider extrinsic evidence to determine the meaning of the contract.

Appeal from the District Court for Lancaster County: Paul D. Merritt, Jr., Judge. Reversed and remanded for further proceedings.

Kevin R. McManaman and Charles E. Wilbrand, of Knudsen, Berkheimer, Richardson & Endacott, L.L.P., for appellant.

Robert B. Seybert and Stephen J. Schutz, of Baylor, Evnen, Curtiss, Grimit & Witt, L.L.P., for appellee David Fiala, Ltd.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Miller-Lerman, J.

## NATURE OF CASE

William Gross appeals the order of the district court for Lancaster County which denied his motion to compel arbitration. The court concluded that the claims in this action were not subject to arbitration under the arbitration provision in the parties' employment agreement. We conclude that the district court erred as a matter of law when it failed to determine that the arbitration provision was ambiguous and to thereafter resolve the ambiguity with extrinsic evidence. We therefore reverse the order denying Gross' motion, and we remand the cause to the district court for further proceedings to resolve the ambiguity and determine the meaning and scope of the arbitration provision.

## STATEMENT OF FACTS

In September 2006, Gross executed an "Associated Person/Individual Agreement/Procedures and Rules" (agreement) with David Fiala, Ltd., doing business as FuturesOne (FuturesOne), which set forth the terms of Gross' employment with FuturesOne. Section 6.B. of the agreement contained the following arbitration provision:

> [Gross] and [FuturesOne] agree to arbitrate any dispute, claim, or controversy that may arise between themselves or a customer or any other person that is subject to arbitration under the rules, constitution or by-laws of the

CFTC or NFA or any other self-regulatory organization with which [Gross] registers, from time to time.

In November 2012, FuturesOne filed a complaint in the district court for Lancaster County against Gross and three other individuals who had signed the same or a similar agreement with FuturesOne. FuturesOne alleged that each of the defendants had resigned from FuturesOne in late 2007 or early 2008; that in the year after resigning, two of the defendants had set up a firm to compete with FuturesOne; and that Gross and the fourth defendant were employed by the competing firm. FuturesOne also alleged that three of the defendants, including Gross, owed money to FuturesOne for amounts that had been paid but not earned at the time they resigned. FuturesOne alleged that Gross owed $7,000. FuturesOne asserted two causes of action for breach of contract. It alleged that Gross and others had breached the agreement (1) by failing to pay amounts owed to FuturesOne and (2) by competing with FuturesOne in violation of the agreement. FuturesOne sought damages against each of the defendants.

Gross filed a motion to dismiss or, in the alternative, to stay proceedings and compel arbitration. Gross asserted that the arbitration provision in his agreement with FuturesOne required that any and all disputes or claims that arose between the parties themselves be subject to arbitration. At a hearing on Gross' motion, the court received affidavits offered by Gross and by FuturesOne into evidence.

The court thereafter filed an order on January 29, 2014, denying Gross' motion. In its order, the court quoted a portion of section 6.B. and indicated that "CFTC" and "NFA" as used in that section referred to the "U.S. Commodity Futures Trade Commission" and the "National Futures Association," respectively. The court stated in its order that in section 6.B., the parties had "agreed to 'arbitrate any dispute, claim or controversy that may arise between themselves . . . that is subject to arbitration under the rules, constitution or by-laws of the CFTC or NFA or any other self-regulatory organization with which [the defendant Gross] registers, from time to time.'" We note that the ellipsis and brackets are in the court's original order.

In its analysis of the scope of the arbitration provision, the court referred to the Web sites of both the CFTC and the NFA. The court quoted a statement from the CFTC's Web site to the effect that the CFTC's mission was "'to protect market participants and the public from fraud, manipulation, abusive practices and systemic risk related to derivatives — both futures and swaps — and to foster transparent, open, competitive and financially sound markets.'" The court quoted a statement from the NFA's Web site that the NFA was "'formed in 1976 to become a futures industry's self-regulatory organization'" and that its regulatory activities included, inter alia, "'providing an arbitration forum for futures and forex-related [sic] disputes.'"

After referring to these sources, the court stated that it did not believe that the parties intended that disputes between themselves regarding money owed by Gross to FuturesOne and regarding alleged violations of a covenant not to compete were to be subject to arbitration pursuant to section 6.B. The court apparently reasoned that these were not the types of disputes that were subject to arbitration under the rules, constitution, or bylaws of the CFTC and the NFA. The court therefore denied Gross' motion.

Gross appeals.

## ASSIGNMENTS OF ERROR

Gross claims, restated, that the district court erred when it (1) denied his motion to compel arbitration, (2) referred to matters outside of the record in rendering its order, and (3) determined that the claims were not within the scope of the agreement.

## STANDARDS OF REVIEW

[1-3] Arbitrability presents a question of law. *Kremer v. Rural Community Ins. Co.*, 280 Neb. 591, 788 N.W.2d 538 (2010). The meaning of a contract and whether a contract is ambiguous are questions of law. See *Davenport Ltd. Partnership v. 75th & Dodge I, L.P.*, 279 Neb. 615, 780 N.W.2d 416 (2010). When reviewing questions of law, an appellate court has an obligation to resolve the questions

independently of the conclusion reached by the trial court. *Village of Memphis v. Frahm*, 287 Neb. 427, 843 N.W.2d 608 (2014).

## ANALYSIS

### The Agreement in This Case Is Governed by the Federal Arbitration Act, and Therefore, the Failure to Meet a Requirement of Nebraska's Uniform Arbitration Act Does Not Make the Arbitration Provision Unenforceable.

We note first that FuturesOne contends, as an alternative to the basis upon which the district court denied Gross' motion, that the court should have denied the motion on the basis that the parties' agreement did not meet one of the requirements of Nebraska's Uniform Arbitration Act (UAA), Neb. Rev. Stat. §§ 25-2601 to 25-2622 (Reissue 2008 & Cum. Supp. 2014). FuturesOne does not contend or specify that either the arbitration provision or the agreement elsewhere delegates to the arbitrator the issue of the UAA's impact on the validity of the arbitration provision. Compare *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 130 S. Ct. 2772, 177 L. Ed. 2d 403 (2010). If the UAA applied as urged by FuturesOne, its argument could determine this appeal, and we therefore consider this argument first. However, we conclude that the agreement is governed by the Federal Arbitration Act (FAA) rather than the UAA and that therefore, a purported failure to meet a requirement of the UAA does not render the arbitration provision unenforceable.

The UAA requires that any standardized agreement in which binding arbitration is the sole remedy for dispute resolution include a specific statement adjoining the signature block which states that the contract contains an arbitration provision. § 25-2602.02. The Nebraska statute provides the exact wording for this notice requirement and requires that this statement be capitalized and underlined. The agreement between FuturesOne and Gross does not contain the statement, and if the agreement were governed by the UAA, the failure to strictly comply with § 25-2602.02 would make the arbitration clause void and unenforceable. See *Kramer v.*

*Eagle Eye Home Inspections*, 14 Neb. App. 691, 716 N.W.2d 749 (2006), *overruled on other grounds*, *Knights of Columbus Council 3152 v. KFS BD, Inc.*, 280 Neb. 904, 791 N.W.2d 317 (2010). However, we have stated that if an agreement is governed by the FAA, then the FAA preempts the Nebraska notice requirement and the lack of the statutorily required statement does not render the arbitration agreement unenforceable. *Aramark Uniform & Career Apparel v. Hunan, Inc.*, 276 Neb. 700, 757 N.W.2d 205 (2008).

[4,5] We noted in *Aramark* that the U.S. Supreme Court held in *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 116 S. Ct. 1652, 134 L. Ed. 2d 902 (1996), that if a contract containing an arbitration clause involves interstate commerce, the FAA governs the contract. Under 9 U.S.C. § 2 (2012), the FAA applies to "a contract evidencing a transaction involving commerce." In *Aramark*, 276 Neb. at 705, 757 N.W.2d at 209, we observed that the U.S. Supreme Court gave this phrase in 9 U.S.C. § 2 "a broad interpretation to give expansive scope to the FAA." See, also, *Webb v. American Employers Group*, 268 Neb. 473, 684 N.W.2d 33 (2004). We further noted in *Aramark* that this court had determined that contracts involving interstate commerce included "contracts for services between parties of different states." 276 Neb. at 706, 757 N.W.2d at 210 (citing cases).

The agreement in this case involves a contract for services between FuturesOne, a Nebraska corporation, and Gross, a South Dakota resident. The agreement also involves services related to futures trading on national markets. There is no serious claim contradicting the fact that the agreement between FuturesOne and Gross involves interstate commerce, and, giving expansive scope to the FAA, the agreement is therefore governed by the FAA. Because the agreement is governed by the FAA, the notice requirement of the UAA, § 25-2602.02, does not apply and the failure to include this statement does not render the arbitration provision unenforceable. We therefore reject FuturesOne's argument based on § 25-2602.02 of the UAA, and we consider Gross' challenge to the district court's ruling on the scope of the arbitration provision.

*The District Court Erred When It Failed to
Determine That the Arbitration Provision Is
Ambiguous and to Thereafter Consider
Appropriate Extrinsic Evidence to
Resolve the Ambiguity.*

Gross claims generally that the district court erred when it failed to compel arbitration of the parties' disputes under the agreement. The question whether the disputes in this case required arbitration hinged on interpretation of the scope of the arbitration provision in section 6.B. of the agreement.

[6] The U.S. Supreme Court has noted that 9 U.S.C. § 2 has the effect of placing arbitration agreements on an equal footing with other contracts and to require that they be enforced according to their terms. See *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 126 S. Ct. 1204, 163 L. Ed. 2d 1038 (2006). In interpreting a contract, a court must first determine, as a matter of law, whether the contract is ambiguous. *Bedore v. Ranch Oil Co.*, 282 Neb. 553, 805 N.W.2d 68 (2011). We determine that the district court failed to recognize an ambiguity in the arbitration provision, and we conclude that the cause must be remanded to the district court for further proceedings to resolve the ambiguity.

The arbitration provision in the parties' agreement, section 6.B., provided as follows:

> [Gross] and [FuturesOne] agree to arbitrate any dispute, claim, or controversy that may arise between themselves or a customer or any other person *that is subject to arbitration under the rules, constitution or by-laws of the CFTC or NFA or any other self-regulatory organization with which* [*Gross*] *registers, from time to time.*

(Emphasis supplied.) In their arguments on appeal, the parties offer differing readings of this arbitration provision. The difference centers on the phrase that is italicized in the above quote and that begins "that is subject to arbitration." In the remainder of our opinion, we sometimes refer to the italicized portion of section 6.B. as "the phrase." The parties differ with respect to what noun or nouns the phrase modifies. FuturesOne contends certain matters are subject to

arbitration, whereas Gross contends certain persons are subject to arbitration.

Under FuturesOne's reading, the phrase modifies "any dispute, claim, or controversy" and therefore the only disputes, claims, and controversies that are subject to arbitration are those that are subject to arbitration under the rules, constitution, or bylaws of the named organizations. Under this interpretation, the phrase describes all disputes (regardless of the parties involved), and therefore, the present disputes between FuturesOne and Gross would be subject to arbitration only if they are the types of disputes that are subject to arbitration under the rules, constitution, or bylaws of the named organizations.

Under Gross' reading, the phrase modifies "any other person" and therefore defines the persons, other than the parties to the agreement and their customers, who may be involved in a dispute that would be subject to arbitration. Under this reading, the arbitration provision applies to all disputes between persons identified in the provision, namely (1) the parties "themselves," (2) "a customer," and (3) "any other person that is subject to arbitration under the rules, constitution or by-laws" of the named organizations. Under Gross' reading, any dispute that involves only the parties themselves, such as the instant case, is subject to arbitration; it is simply not necessary to consider the rules of the named organizations to determine whether a dispute between the parties "themselves" is subject to arbitration. Under Gross' interpretation, the rules, constitution, or bylaws of the named organizations are relevant only to determine what "other person" involved in a dispute is subject to arbitration under the agreement.

The district court in this case read the arbitration provision in the manner urged by FuturesOne; that is, the phrase modified "dispute, claim, or controversy." As a result, the court found it necessary to determine whether the disputes between FuturesOne and Gross were the types of disputes that were subject to arbitration under the rules, constitution, or bylaws of the CFTC and the NFA. The court concluded that the disputes in this case were not the types of disputes subject to

arbitration under the organizations' rules and that therefore, the parties' agreement did not require arbitration of the disputes in this case.

In its analysis of the arbitration provision, the district court stated that the parties had "agreed to 'arbitrate any dispute, claim or controversy that may arise between themselves . . . that is subject to arbitration under the rules, constitution or by-laws of the CFTC or NFA or any other self-regulatory organization with which [the defendant Gross] registers, from time to time.'" The ellipsis within the quote of section 6.B. was inserted by the district court in the portion of its order quoted above, and certain language found in section 6.B. was removed. By including the ellipsis and eliminating a portion of the text of the arbitration provision, the district court obscured the ambiguity that exists in the arbitration provision. The district court's editing of the provision made it appear clear that the phrase in section 6.B. which begins "that is subject to arbitration" modifies "any dispute, claim or controversy" and therefore applies to all disputes, including disputes between the parties themselves, and limits the arbitration requirement to disputes that are subject to arbitration under the named organizations' rules.

Whether a contract is ambiguous is a question of law. *Davenport Ltd. Partnership v. 75th & Dodge I, L.P.*, 279 Neb. 615, 780 N.W.2d 416 (2010). As an appellate court, we have an obligation to resolve questions of law independently of the conclusion reached by the trial court. See *Village of Memphis v. Frahm*, 287 Neb. 427, 843 N.W.2d 608 (2014). Therefore, we must independently determine whether the arbitration provision in the agreement between FuturesOne and Gross is ambiguous. We conclude that it is.

[7] A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings. *American Fam. Mut. Ins. Co. v. Wheeler*, 287 Neb. 250, 842 N.W.2d 100 (2014). Because the phrase "that is subject to arbitration" immediately follows "any other person," it is grammatically reasonable to read the arbitration provision as Gross

urges; that is, that the phrase refers to persons. However, it is also reasonable, although perhaps not as grammatical, to read the sentence in the manner urged by FuturesOne, in which the phrase beginning "that is subject to arbitration" modifies "any dispute, claim, or controversy." Such reading may be reasonable despite the lack of proximity between the two phrases. We find both interpretations to be reasonable, but the interpretations conflict. FuturesOne's interpretation would require an examination of the rules, constitution, and bylaws of the CFTC and the NFA to determine whether the disputes between FuturesOne and Gross are subject to arbitration, whereas Gross' interpretation would not require such an examination, because all disputes between FuturesOne and Gross would be subject to arbitration.

[8,9] When a court has determined that ambiguity exists in a document, an interpretative meaning for the ambiguous word, phrase, or provision in the document is a question of fact for the fact finder. *Davenport Ltd. Partnership v. 75th & Dodge I, L.P., supra.* If a contract is ambiguous, the meaning of the contract is a question of fact and a court may consider extrinsic evidence to determine the meaning of the contract. *Id.* Therefore, in the present case, the district court should have considered extrinsic evidence to determine the meaning of the arbitration provision in the agreement.

Without remarking on whether the court's consideration of the Web sites regarding the types of disputes that are subject to arbitration under the rules, constitution, and bylaws of the CFTC and the NFA was proper, such consideration did not address or resolve the ambiguity in the arbitration provision. Because the district court did not note the ambiguity discussed above, it failed to look to appropriate extrinsic evidence to resolve the ambiguity as to what word or words the phrase that begins "that is subject to arbitration" modifies. We therefore reverse the order of the district court and remand the cause for further proceedings in which the district court shall resolve this ambiguity in the arbitration provision, section 6.B., and thereafter determine whether the agreement requires arbitration of the disputes between FuturesOne and Gross.

## CONCLUSION

We conclude that the district court erred when it failed to determine that the arbitration provision, section 6.B., was ambiguous and to thereafter resolve the ambiguity by considering appropriate extrinsic evidence. We therefore reverse the order of the district court which denied Gross' motion to compel arbitration, and we remand the cause for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

---

KYLE KERCHER, APPELLEE AND CROSS-APPELLANT,
v. BOARD OF REGENTS OF THE UNIVERSITY
OF NEBRASKA ET AL., APPELLANTS
AND CROSS-APPELLEES.

___ N.W.2d ___

Filed March 20, 2015.    No. S-14-211.

1. **Summary Judgment.** Summary judgment is proper if the pleadings and admissible evidence offered show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.
2. **Summary Judgment: Appeal and Error.** In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives the party the benefit of all reasonable inferences deducible from the evidence.
3. **Contracts: Judgments: Appeal and Error.** The meaning of a contract is a question of law, in connection with which an appellate court has an obligation to reach its conclusions independently of the determinations made by the court below.
4. **Attorney Fees: Appeal and Error.** An appellate court reviews a court's award of attorney fees under Neb. Rev. Stat. § 48-1231 (Reissue 2010) for abuse of discretion.
5. **Employment Contracts: Breach of Contract: Proof.** In an action for breach of an employment contract, the burden of proving the existence of a contract and all the facts essential to the cause of action is upon the person who asserts the contract.
6. **Contracts.** When the terms of a contract are clear, a court may not resort to rules of construction, and the terms are to be accorded their plain and ordinary meaning as an ordinary or reasonable person would understand them.