756 N.W.2d 742 (2008)
17 Neb. App. 112
TRACY BROADCASTING CORPORATION, a Nebraska corporation, Appellee,
v.
TELEMETRIX, INC., a Delaware corporation, Appellant.
No. A-07-1327.
Court of Appeals of Nebraska.
October 14, 2008.
*744 Richard A. Douglas, of Douglas, Kelly, Ostdiek & Bartels, P.C., Scotts Bluff, for appellant.
Leland K. Kovarik, of Kovarik, Ellison & Mathis, P.C., Gering, for appellee.
IRWIN, SIEVERS, and CARLSON, Judges.
*745 SIEVERS, Judge.
Tracy Broadcasting Corporation (TBC) filed suit in the Scotts Bluff County District Court against Telemetrix, Inc., claiming that Telemetrix was indebted to it in the amount of $467,000 together with interest at 10 percent per annum from December 31, 2004. Telemetrix filed a motion to compel arbitration, alleging that a series of promissory notes, supposedly the basis for TBC's lawsuit, contained a provision that all disputes concerning such would be settled by submitting the same to binding arbitration. The district court concluded that the document underlying TBC's claim did not contain an arbitration clause and therefore denied Telemetrix's motion to compel arbitration. Telemetrix now appeals that decision.

FACTUAL BACKGROUND
Telemetrix was and is what could be called a "high-tech startup." It had a line of business involving pagers, where people could receive messages through a pager they purchased, and it is undisputed that the associated data transmissions crossed multiple state lines. Telemetrix's second line of business involved the attempt to develop hardware and software to engage in nationwide utility meter reading and billing services. The apparent centerpiece of this business was the development of a wireless telemetry device known as the T3000, but that device was never successfully implemented, manufactured, or deployed. Instead, in August 2002. Telemetrix moved away from the development of the T3000 to focus on providing services for the growing number of devices in service, such as pagers and remote monitoring hardware. However, the efforts concerning the T3000 required financing, a portion of which was provided by loans from TBC and its sole stockholder and president, Michael J. Tracy. Tracy served as the president of Telemetrix from early 2000 until November 2004. Telemetrix needed venture capital for the development of the T3000. TBC loaned money to Telemetrix and continued to do so periodically.
The operative first amended complaint contains a listing of 13 promissory notes designated by exhibit letter, date, and amount. The total listed in this complaint for the promissory notes is $347,201.36. Eleven of the thirteen promissory notes are attached to the operative complaint found in our record. The terms of the notes show that the noteholder was given the option to convert the note into Telemetrix stock. The complaint recites that none of the notes have been so converted. Each note contains a paragraph providing, "All disputes concerning this Note will be submitted to binding arbitration in Denver, Colorado, in accordance with the Expedited Procedures of the American Arbitration Association's Commercial Arbitration Rules." Although the complaint asserts the principal balance due is $467,000, the total of the itemized promissory notes is almost $120,000 less than the recovery sought by the lawsuit.
That discrepancy is perhaps explained by paragraph 5 of the complaint, in which TBC asserts that shareholders of Telemetrix entered into an agreement of November 30, 2004, in evidence as exhibit 24, entitled "Binding agreement between the undersigned shareholders of Telemetrix, Inc." (Binding Agreement). In the definitions portion of the Binding Agreement, Tracy is identified as "MT," followed by another term, "MT and MT entities owning shares," which was then designated as "MT Ents." The key provision of the Binding Agreement is the following paragraph found in section 1.4, entitled "Historic Conversions," which provides:

*746 All MT Ents interests, except his $467,000 loan note, shall aggregate to no more than 42,594,678 common shares. MT Ents will be given a new note for $467,000 which will provide that the maturity date shall be for twenty four (24) months from December 31, 2004 and that if the loan note is not repaid by such date, at the option of the holder it may be converted into equity at $0.02 per share. The loan note shall bear simple interest at 10% per annum from December 31, 2004.
Additionally, we note that in section 2.1, "Management Team and Employees," the Binding Agreement further provides:
MT Ents agree that, other than in respect of theft or fraud, all current claims against Nyssen, [TowerGate], [Telemetrix] and its subsidiaries (other than the $467,000 note and the $55,850 expenses due to MT from [Telemetrix] as set out above in Section 1.4) are dropped and all claims relating to actions prior to the date of this agreement which may be considered in the future against the above or Becker Ents are waived in full and will not be prosecuted.
The Binding Agreement makes no reference whatsoever to submission of any dispute involving the parties thereto to arbitration.
Telemetrix filed an answer to TBC's first amended complaint and alleged that exhibits A through M, the promissory notes listed in TBC's first amended complaint, require disputes to be submitted to binding arbitration and that thus, the court had no jurisdiction over the subject matter under Neb. Ct. R. Pldg. § 6-1112(b)(1). Telemetrix also set forth a number of affirmative defenses, including that all indebtedness from Telemetrix to Tracy has been paid, but at this point in the proceedings, we need not discuss such defenses, because the sole issue is whether this dispute must be submitted to binding arbitration.

DISTRICT COURT PROCEEDINGS AND DECISIONS
On August 3, 2007, the district court held a hearing on Telemetrix's motions to compel arbitration. We use the plural because the decisions of the district court before us reveal that there were actually two cases filed against Telemetrix: the instant case brought by TBC, docketed in the trial court as case No. CI07-37, and another suit brought by Tracy individually and docketed as case No. CI06-291. We mention this fact although only the TBC versus Telemetrix case is before us, because the trial court's orders we discuss apply to both cases and resolve the matter of arbitration in each case.
In any event, on August 23, 2007, the district court entered its memorandum order with a comprehensive and concise analysis of the two cases and the applicable state and federal law concerning arbitration. The court concluded that the Federal Arbitration Act would preempt Nebraska's Uniform Arbitration Act if the notes and agreement upon which liability was allegedly premised were "transactions involving commerce." On the other hand, the court cited our decision in Kramer v. Eagle Eye Home Inspections, 14 Neb.App. 691, 716 N.W.2d 749 (2006), for the proposition that if commerce was not involved, the Nebraska act would not be preempted. We shall later discuss our decision in Kramer in some detail, because what we said in that opinion may well be misleading to the bench and bar. In any event, the trial court decided that an evidentiary hearing was needed to determine whether the instant case (as well as the case brought by Tracy individually) had to be submitted to arbitration. That evidentiary hearing was held October 11, and after *747 briefing, the district court entered its memorandum order determining that the instant case brought by TBC was not subject to arbitration and that the claims brought by Tracy individually were subject to arbitration, although the latter decision is not implicated in this appeal. It is important to note that the record before us does not contain the pleadings or the promissory notes upon which recovery was sought in the suit that Tracy individually brought against Telemetrix, and as a result, we do not know anything about what documents that lawsuit was premised upon.

ASSIGNMENTS OF ERROR
Telemetrix claims, restated, that the district court erred in denying its motion to compel arbitration; in not finding that the Federal Arbitration Act, see 9 U.S.C. § 1 et seq. (2006), compels arbitration; and in not determining initially that Nebraska's Uniform Arbitration Act, see Neb.Rev. Stat. § 25-2601 et seq. (Reissue 1995 & Cum. Supp. 2006), was applicable and required arbitration.

STANDARD OF REVIEW
Statutory interpretation presents a question of law. Billingsley v. BFM Liquor Mgmt., 264 Neb. 56, 645 N.W.2d 791 (2002). On questions of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. Id.

ANALYSIS

Introduction.
We begin by noting that denial of a motion to compel arbitration is a final, appealable order under Nebraska law because it affects a substantial right and is made in a special proceeding. Webb v. American Employers Group, 268 Neb. 473, 684 N.W.2d 33 (2004). Next, we outline the fundamental disagreement between the parties, which we take from their briefing.
Telemetrix contends that this lawsuit is to recover on promissory notes, identified as exhibits A through M and attached to the operative complaint, and that such notes contain a mandatory arbitration clause. Telemetrix argues that such clauses must be enforced by granting its motion to compel arbitration and that thus, the trial court's decision is in error. In contrast, TBC contends that the lawsuit does not seek recovery on the attached promissory notes, but, rather, upon the Binding Agreement, in which Telemetrix agreed to issue its promissory note for $467,000 payable by December 31, 2006, to TBC. Thus, the crucial question is which document(s) the lawsuit is premised upon.
Telemetrix asserts that "[w]hether a claim falls within the scope of an arbitration agreement turns on the factual allegation in the complaint rather than the legal causes of action asserted." Brief for appellant at 19. We disagree because, as held in Cornhusker Internat. Trucks v. Thomas Built Buses, 263 Neb. 10, 637 N.W.2d 876 (2002), arbitration is purely a matter of contract. The correct statement of applicable law is as follows:
The U.S. Supreme Court has held that arbitration "`is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" AT & T Technologies v. Communications Workers, 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). A party has a constitutional right to adjudication of a justiciable dispute, and the law will not find a waiver of that right absent "`direct and explicit evidence of actual intent'" of a party's agreement to do so. McCarthy v. Azure, 22 F.3d 351, 358 n. 9 *748 (1st Cir.1994). The arbitration act prohibits a court from compelling arbitration unless the court first satisfies itself that the issue is referable to arbitration under such an arbitration clause. 9 U.S.C. § 3. Thus, whether an issue is to be decided by arbitration is a matter of the parties' contractual intent. Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995).
Smith Barney, Inc. v. Painters Local Union No. 109, 254 Neb. 758, 762-63, 579 N.W.2d 518, 521-22 (1998).

Did District Court Err in Denying Motion to Compel Arbitration?
Despite the need for and the importance of a contractual agreement to arbitrate, this case requires close examination of the operative complaint and the promissory notes attached thereto, all of which unquestionably have an arbitration clause. TBC's present counsel suggests that the attachment of and reference to this series of promissory notes from Telemetrix to TBC are superfluous, given that such are not the basis for the claimed recovery.
The operative complaint begins by alleging that TBC loaned money to Telemetrix via a series of promissory notes and that the principal balance due is $467,000. The complaint says that this amount was allegedly "accumulated over a period of time based on the Promissory Notes attached hereto to [TBC]." The complaint contains the list of 13 promissory notes, but the only factual conclusion alleged after setting forth the list of the 13 notes is that TBC has not converted any of such debt to Telemetrix stock, which could have been done under the terms of the notes. The complaint then suddenly "shifts gears" and alleges the existence of the Binding Agreement of November 30, 2004, and that such agreement provides for a $467,000 promissory note from Telemetrix to TBC. The operative complaint alleges that this note was not delivered in accordance with the agreement, nor has any part of the debt it evidenced been paid. The complaint then alleges that such debt is due and owing and prays for judgment accordingly. The complaint does not allege that the Binding Agreement or the $467,000 promissory note provided for therein replaced, was substituted for, or is the equivalent of the 13 promissory notes. And, as said earlier, the sum of the 13 promissory notes is almost $120,000 less than $467,000.
Thus, we must admit that we do not comprehend why the complaint even mentions the 13 promissory notes or attaches the majority of them to the complaint. We have closely examined the Binding Agreement and found no reference whatsoever to the 13 promissory notes referenced in the operative complaint. Such fact leads to the inescapable conclusion that the Binding Agreement, at least insofar as its written terms provide, was a separate and distinct obligation of Telemetrix from the 13 promissory notes.
The evidence does not include an actual signed promissory note, and Tracy admits that he never received such. However, there is an unsigned "draft" of such a note in evidence in the amount of $467,000 payable by Telemetrix to TBC dated December 31, 2004, drawn for the signature of William W. Becker, chairman of the board of Telemetrix. This unsigned note does not contain any language providing or even implying that the note is a replacement for any previous promissory note(s), such as those attached to the complaint.
Exactly how the Binding Agreement and the draft promissory note referenced above in the amount of $467,000 came into existence is illuminated by exhibit 27, a U.S. Securities and Exchange Commission *749 (SEC) "Form 10-KSB," for the fiscal year ending December 31, 2004. This required filing with the SEC provides public information as to the operation and status of publicly held corporations, such as Telemetrix. On page 17 of that document, a section entitled "ITEM 3. LEGAL PROCEEDINGS" is found. In this section, Telemetrix indicates that it filed suit in the U.S. District Court for the Southern District of New York against Tracy, Becker, and Michael L. Glaser for compensatory damages and an injunction against those three individuals for breach of fiduciary duty and against Tracy for conversion. The Form 10-KSB further recounts the filing of suit in the U.S. District Court for the District of Nebraska against two other organizations ("TowerGate" and "Nyssen"), apparently investors in or lenders to Telemetrix, alleging breach of fiduciary duty and other claims. It is then recited that on December 10, Telemetrix, Tracy, Becker, and Glaser and other majority stockholders, as well as TowerGate and Nyssen (defendants in the Nebraska case referenced above), entered into a "binding agreement dated as of November 30, 2004," in which the parties agreed to dismiss the above-described lawsuits and settle the disputes between Telemetrix and TowerGate and Nyssen and between Telemetrix and Tracy, Becker, and Glaser. Certain provisions not pertinent to this case that address the governance of the corporation are then set forth. The Telemetrix Form 10-KSB then provides as follows:
Under the agreement we agreed to issue a new promissory note to ... Tracy or his affiliate for a loan he made to us of $467,000. The note will be due and payable in 24 months from December 31, 2004, and will bear simple interest at 10% per annum from December 31, 2004, until maturity. At maturity, ... Tracy or his affiliate may convert this note at his option into our common voting stock at $.02 per share.
The Telemetrix Form 10-KSB filed with the SEC further provides that "we issued [TBC] a promissory note for $467,000 for the $467,000 loan made to us."
It is important to note that there is no reference whatsoever in this SEC filing that the $467,000 promissory note replaces, substitutes for, or is the equivalent of the promissory notes listed and referenced in the operative complaint in this lawsuit as exhibits A through M. Nor was any other evidence to such effect introduced by Telemetrix. The district court's order with respect to the instant lawsuit notes that arbitration is a matter of consent and that a court may not thrust a party into arbitration who has not agreed to such. The district court finds that the November 30, 2004, Binding Agreement does not contain an arbitration clause and that thus, the Telemetrix motion to compel arbitration is denied.
Our review of the record shows that the instant lawsuit is a suit upon the Binding Agreement of November 30, 2004, and that such agreement contains no provision whatsoever for arbitration of disputes arising from that document. The scope of this appeal is simply whether the trial court erred in denying the motion to compel arbitrationat this stage, the merits of TBC's claim for judgment in the amount of $467,000 plus interest are not involved. There is no provision for arbitration in the document upon which TBC premises its claim against Telemetrix. Therefore, the trial court's ruling denying arbitration is correct and is hereby affirmed.

Is Nebraska's Uniform Arbitration Act Applicable?
Telemetrix argues that Nebraska's Uniform Arbitration Act applies. See § 25-2601 et seq. We disagree and take *750 this opportunity to do some remedial work. We note that the trial court discussed this court's decision in Kramer v. Eagle Eye Home Inspections, 14 Neb.App. 691, 716 N.W.2d 749 (2006). In the Kramer opinion, we said: "However, Nebraska's Uniform Arbitration Act, discussed below, does not mention `commerce' at all. Additionally, there is no authority cited that [Nebraska's] Uniform Arbitration Act is somehow preempted by the federal Arbitration Act, necessitating a showing of an effect on interstate commerce." 14 Neb. App. at 705, 716 N.W.2d at 763, First, the above-quoted statement is hardly a model of clarity. Moreover, to the extent that such statement says that the Federal Arbitration Act does not preempt Nebraska's Uniform Arbitration Act when "commerce" is involved in the transaction at issue, the statement from Kramer is incorrect.
In Webb v. American Employers Group, 268 Neb. 473, 478-79, 684 N.W.2d 33, 39 (2004), the court said:
The [Federal Arbitration Act (FAA)] applies to "a contract evidencing a transaction involving commerce." 9 U.S.C. § 2. "Commerce" as defined by the Act includes "commerce among the several States." 9 U.S.C[.] § 1. The U.S. Supreme Court has given the FAA an expansive scope by broadly construing the phrase "`a contract evidencing a transaction involving commerce.'" Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 277, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995) (cited in Kelley v. Benchmark Homes, Inc., 250 Neb. 367, 550 N.W.2d 640 (1996)). The Court has held that the phrase "`involving commerce'" requires a broad interpretation in order to give effect to the FAA's basic purpose, which is to put arbitration provisions on the same footing as a contract's other terms. Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. at 277, 115 S.Ct. 834. The Court has further noted that "the word `involving,' like `affecting,' signals an intent to exercise Congress' commerce power to the full." Id. The statutory phrase "`evidencing a transaction'" has been construed by the Court to include transactions involving interstate commerce even where the parties did not contemplate an interstate commerce connection. Id.

(Emphasis omitted.)
Therefore, it is clear that where the transaction involves commerce, the federal act governs. Given the business that Telemetrix was engaged in, there can be no real dispute that the Binding Agreement settling litigation in New York and Nebraska, as well as defining the future management of a publicly held company that is in the business of transmitting data across state lines, as well as the Mexican and Canadian borders, is a transaction "affecting commerce." See Doctor's Associates, Inc. v. Casarotto, 517 U.S. 681, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996) (Montana arbitration statute was preempted by Federal Arbitration Act because involved transaction affected interstate commerce). Both counsel at oral argument admitted that commerce is affected. The Federal Arbitration Act would preempt Nebraska's Uniform Arbitration Act if there were an arbitration clause in the Binding Agreement. It is appropriate that we take note of the fact that the trial judge's opinion in the instant case discerned the flaw in the Kramer opinion.

CONCLUSION
Because TBC's lawsuit is premised upon a contract, the Binding Agreement of November 30, 2004, and such contract does not contain an agreement to arbitrate disputes, *751 the trial court properly denied Telemetrix's motion to compel arbitration.
AFFIRMED.