IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2016 Term

_____

No. 11-1613

_____

**FILED**
**March 15, 2016**

released at 3:00 p.m.
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

RYAN CUNNINGHAM,
Petitioner,

v.

RONALD F. LEGRAND and MOUNTAIN COUNTRY PARTNERS, LLC,
Respondents.

_____

Appeal from the Circuit Court of Kanawha County
Honorable James C. Stucky
Civil Action No. 10-C-1269

AFFIRMED

_____

Submitted: February 24, 2016
Filed:  March 15, 2016

Richard Neely, Esq.                      William F. Dobbs, Jr., Esq.
Neely & Callaghan                        William C. Ballard, Esq.
Charleston, West Virginia                Elizabeth A. Amandus, Esq.
Counsel for Petitioner                   Jackson Kelly PLLC
                                         Charleston, West Virginia
                                         Counsel for Chapter 11 Trustee of
                                         The Bankruptcy Estate of Mountain
                                         Country Partners, LLC

JUSTICE LOUGHRY delivered the Opinion of the Court.

SYLLABUS


Manifest disregard of the law is not recognized as a valid statutory basis for challenging an arbitration award made pursuant to the provisions of the Federal Arbitration Act, 9 U.S.C. §§ 1-16 (2012).

LOUGHRY, Justice:

The petitioner, Ryan Cunningham, appeals from the November 2, 2011, order of the Circuit Court of Kanawha County confirming an arbitration award and entering judgment on that award.[1]  Seeking to obtain a vacatur of the arbitration award, the petitioner argues that: the arbitrator manifestly disregarded the law of West Virginia; the arbitrator considered hearsay evidence; and the arbitrator refused to reopen the proceedings for rebuttal evidence.[2]  In response to these assignments of error, the bankruptcy trustee[3] for respondent Mountain Country Partners, LLC ("Mountain Country") argues that the petitioner has failed to identify any valid basis for setting aside the arbitration award.  We concur and accordingly affirm the lower court's ruling in this matter.  Our decision is compelled both by the constricted scope of review for an arbitral award and the petitioner's failure to raise even a colorable basis for vacating the award.

---

[1]This appeal was subject to an automatic stay pursuant to the provisions of 11 U.S.C. § 362(a) (2012) by virtue of an involuntary bankruptcy petition filed against respondent Mountain Country Partners, LLC in the United States Bankruptcy Court for the Southern District of West Virginia.  By order entered on May 12, 2015, this Court directed that the automatic stay be lifted.

[2]Petitioner was represented by counsel when the subject appeal was filed.  This Court granted his attorney's motion to withdraw as counsel by order entered on May 12, 2015.  Mr. Cunningham was not represented by counsel at oral argument.

[3]*See supra* note 1.

1

## I. Factual and Procedural Background

Mountain Country, a West Virginia limited liability company, was formed for the purpose of acquiring land and mineral rights to develop oil and gas properties in West Virginia and Kentucky.[4] On October 10, 2006, Mr. Cunningham, Ronald F. LeGrand, and four additional individuals signed the Operating Agreement of Mountain Country ("Operating Agreement"). While the petitioner managed the day-to-day operations of Mountain Country for a salary,[5] Mr. LeGrand was the actual manager due to his controlling voting percentage. Dissatisfied with the venture's lack of profit and fearful that Mr. LeGrand was wrongfully disposing of assets and/or committing fraud,[6] the petitioner instituted a civil action in the Circuit Court of Kanawha County on July 14, 2010. He sought injunctive relief for the purpose of gaining "access to all corporate records including all investor contact information . . . and [requested] that he be given operating control of

---

[4]The subject properties were purchased at a public auction from the bankruptcy estate of Buffalo Properties for $7.1 million. Ronald F. LeGrand organized investors to purchase the properties after learning of their availability from a friend of the petitioner's while giving seminars on real estate investing. Mr. LeGrand is not a party to this appeal.

[5]His managerial duties included the purchasing of equipment, the maintenance of equipment, and the supervision of employees. Additionally, Mr. Cunningham obtained permits, procured bonds, and oversaw matters involving compliance.

[6]Mr. LeGrand was investigated by the Securities and Exchange Commission for civil fraud. In connection with charges that he and another person induced investors to purchase land and other assets from a bankrupt oil and gas company headquartered in West Virginia while misrepresenting the degree of risk and the amount of expected return, Mr. LeGrand agreed to a $150,000 fine by a consent decree.

2

Mountain Country Partners, LLC."[7]  Because the petitioner had not submitted his claims to arbitration, as required by the Operating Agreement,[8] the respondents sought to dismiss the complaint.

Before the matter proceeded to arbitration pursuant to the mandatory arbitration clause contained in the Operating Agreement,[9] a ruling was obtained with regard to the petitioner's attempt to gain access to the company records.  Judge John Hrko, sitting in for Judge Stucky, ruled by order entered on November 5, 2010, that "*West Virginia Code 31B-4-408* gives a member of a West Virginia LLC the absolute right to review all of the books and records of the LLC . . . ."  Pursuant to that order, Mountain Country was directed to give the petitioner reasonable access to "all books and records."[10]  The underlying case was stayed by the circuit court pending arbitration.

---

[7]The petitioner sought access to the company's books pursuant to West Virginia Code § 31B-4-408 (2015) (providing authority for members of limited liability company to access company's records).

[8]Pursuant to the terms of the Operating Agreement, the petitioner, along with the other signatories, had agreed that either party to a grievance could initiate arbitration proceedings, that the arbitration would be governed by the Federal Arbitration Act [9 U.S.C. §§ 1-16], that the arbitration would transpire in Duval County, Florida, that damages were limited to compensatory damages, and "that the decision of the arbitrator shall be final and binding and enforceable in a court of law."

[9]There was no dispute in this case with regard to the requirement that the matter be resolved through arbitration; there was also no dispute as to the selection of the arbitrator.

[10]When Mr. LeGrand sought a protective order with regard to document production, Judge Stucky referred the issue to the arbitrator.

During the arbitration proceeding, a dispute arose when the petitioner sought to discover the identity of Mountain Country's investors. He argued that the provisions of West Virginia Code § 31B-4-408 (2015) entitled him to gain access to the investor list in addition to the company's books and records he had already been permitted to review. Citing to the provision of the statute that excepts disclosure of business records "to the extent the demand or the information demanded is unreasonable or otherwise improper under the circumstances," the arbitrator denied the petitioner access to the investor list. *Id.* at § 31B-4-408(b)(2). In furtherance of the ruling, the arbitrator found that the "identities of the additional investors in MCP [Mountain Country] are irrelevant to the claims and counterclaims advanced in this arbitration."

A three-day arbitration hearing commenced on April 18, 2011. At issue were the petitioner's singular claim predicated on seeking control of Mountain Country[11] as well as five counterclaims filed by Mr. LeGrand and Mountain Country against the petitioner.[12]

[11]Specifically, the petitioner sought to have the Operating Agreement reformed to remove Mr. LeGrand from having control of Mountain Country. The petitioner sought to have a new manager elected by majority vote of the members, the appointment of a receiver, or his appointment as manager subject to confirmation or rejection by a majority of the members. The arbitrator denied this relief, finding no legal basis for the petitioner's request.

[12]Those counterclaims asserted that the petitioner had (1) converted 855 barrels of Mountain Country oil for use by one of his unrelated ventures, Cunningham Energy; (2) converted $29,700 of Mountain Country equipment to use for his other ventures, Cunningham Energy and Raven Ridge; (3) converted Mountain Country funds to pay his personal debts and expenses, including $17,400 in personal air travel, $7,150 in personal reimbursements to himself for excessive and inappropriate website design fees, and $14,000

4

The evidence presented at the hearing included witness testimony, deposition testimony, and documentary evidence. The arbitrator advised the parties that he would take all evidence "for what it's worth and discard it if it's not relevant." By agreement of the parties, all documents were introduced into evidence as authentic and admissible. The arbitrator found all the witness testimony to be credible.

On the third day of the arbitration hearing, the petitioner did not attend the proceedings; his counsel failed to seek either a postponement or a continuance.[13] Through a decision issued on July 5, 2011, the arbitrator denied the petitioner's claim but awarded relief against him based on the respondents' counterclaims. Mr. Cunningham was ordered by the arbitrator to pay Mountain Country $113,717.50 in damages and $162,442.00 in attorney's fees and costs.[14] The petitioner did not offer any testimony or defense in response to the counterclaims advanced by the respondents.[15] Only when the award was issued did

in legal fees related to a separate, failed venture known as ASHRO; (4) falsified Mountain Country asset values for his personal benefit; and (5) spoliated evidence of his and his agents' malfeasance in regard to Mountain Country.

[13]Purportedly, his failure to attend the final day of the hearing was due to a relapse of a prior case of sunstroke, brought on by the 93 degree heat of Jacksonville, Florida, where the hearing was taking place.

[14]The arbitrator ruled in favor of Mr. LeGrand and Mountain Country on three of the five counterclaims pertaining to conversion of company property and company funds.

[15]His counsel's explanation was strategy driven: viewing the evidence against his client as unreliable, he assumed it would be disregarded by the arbitrator.

the petitioner seek to reopen the proceedings for the purpose of submitting rebuttal evidence. This request was denied by the arbitrator.

When the respondents sought to confirm the arbitration award in the circuit court, the petitioner filed a motion to vacate. The circuit court denied that motion and this appeal followed.

## II.  Standard of Review

As this Court recently acknowledged, "'the scope of judicial review for an arbitrator's decision is among the narrowest known at law.'" *CDS Family Trust, LLC v. ICG, Inc.,* No. 13-0375, 2014 WL 184441, at *3 (W.Va. Jan. 15, 2014) (memorandum dec'n) (citing *MCI Constructors, LLC V. City of Greensobro,* 610 F.3d 849, 857 (4th Cir. 2010)). "'Awards by arbitration are to be favored and liberally construed and are not to be set aside unless they appear to be founded on grounds clearly illegal.'" *Board of Educ. v. W. Harley Miller, Inc.* ("*Harley Miller II*"), 160 W.Va. 473, 494 n.7, 236 S.E.2d 439, 451 n.7 (1977) (quoting Syl. Pt. 3, *Hughes v. Nat'l Fuel Co.*, 121 W.Va. 392, 3 S.E.2d 621 (1939)). Because the full panoply of evidentiary and other procedural rules that govern cases at law do not apply to arbitration matters, even greater deference is given to decisions made by arbitrators which pertain to matters of procedure. *See Harley Miller II*, 160 W.Va. at 485, 236 S.E.2d at 446. Bearing these standards in mind, we proceed to consider whether

the circuit court committed error by its decision to confirm and enter the award of the arbitrator.

### III. Discussion

The petitioner acknowledges the limited grounds upon which vacatur of an arbitral award may be sought under the governing Federal Arbitration Act ("FAA").[16] *See* 9 U.S.C. §§ 1-16 (2012). Under section ten of the FAA, an arbitration award may be vacated for the following four grounds:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

*Id.* at § 10. Seeking to expand those statutory grounds, the petitioner suggests that the United States Supreme Court has sanctioned an additional basis for obtaining review of an arbitral award: "manifest disregard for the law."[17] *See Wilko v. Swan*, 346 U.S. 427, 436

---

[16]*See supra* note 8.

[17]By asserting "manifest disregard of the law" as a basis for review of the arbitral award, the petitioner maintained that the arbitrator, in ruling on a preliminary matter, ignored the provisions of West Virginia Code § 31B-4-408 that govern a member's access

7

(1953), *overruled on other grounds, Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477 (1989) (recognizing distinction between arbitrator's interpretation of law and manifest disregard of law for purposes of judicial review).

In *Hall Street Associates, L.L.C. v. Mattel, Inc.,* 552 U.S. 576 (2008), the United States Supreme Court was asked to determine whether the FAA precludes a federal court from enforcing a clearly expressed agreement that provided for more expansive judicial review of an arbitration award than the much narrower standard of review set forth in the FAA. The arbitration agreement at issue in *Hall Street* contained a provision that permitted the parties to seek judicial review for plain legal errors–a provision that does not exist as a stated ground for review under the FAA. In resolving whether a private agreement could effectively expand the grounds for judicial review under the FAA, the high court was clear that sections 10 and 11[18] of the FAA "provide exclusives regimes for the review provided by the statute." *Id.* at 590. As part of its ruling in *Hall Street*, the high court commented on the theoretical existence of authority independent of the FAA–provided by state statutory or common law– for review of arbitration awards. *See id.* Significantly,

_____

to the records of a limited liability company.

[18]Section 11 provides for a modification or correction of the arbitral award (a) where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award; (b) where the arbitrators have awarded upon a matter not submitted to them; and (c) where the award is imperfect in matter of form not affecting the merits of the controversy. *See* 9 U.S.C. § 11.

however, this brief recognition of hypothetical non-FAA grounds for reviewing arbitration awards has, to date, not been acted upon by the Supreme Court.

As a result, the petitioner's suggestion to this Court that the United States Supreme Court has sanctioned the assertion of a particular non-FAA ground for seeking to vacate an arbitration award lacks both candor and legal support.[19]  Because the high court has declined to revisit the issue of whether "manifest disregard of the law" has any continued viability after *Hall Street* as an independent ground for review,[20] the lower federal courts have concluded that the grounds set forth in the FAA remain the only mechanism for challenging arbitration awards.  *See PNGI Charles Town Gaming, L.L.C. v. Mawing*, 2015 WL 898559 at *1, n.1 (4th Cir. 2015) ("In the wake of the Supreme Court's decision in *Hall Street*, this court has recognized that considerable uncertainly exists 'as to the continuing viability of extra-statutory grounds for vacating arbitration awards.'") (internal citations omitted); *see Sheet Metal Worker's Int'l Ass'n v. Beckley Mechanical, Inc.,* 803 F.Supp.2d

[19]The  grounds for vacatur in this case are limited to the grounds provided in the FAA under the terms of the Operating Agreement.  Consequently, the petitioner's attempt to rely on *Hall Street* fails on both procedural and substantive grounds.  Not only was there no attempted expansion within the subject arbitration clause of the scope of judicial review beyond that expressly provided by the FAA, but further lacking is reference to any state statute or common law as a basis for the assertion of the "manifest disregard" challenge.

[20]*See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 672 n.3 (2010) ("We do not decide whether '"manifest disregard"' survives our decision in *Hall Street* as an independent ground for review or as a judicial gloss on the enumerated grounds for vacatur set forth at 9 U.S.C. §10.") (internal citation omitted).

511, 516 (S.D. W.Va. 2011) ("'On application for an order confirming the arbitration award, the court must grant the order unless the award is vacated, modified, or corrected as prescribed in [9 U.S.C. §§ 10-11]. . . .'") (quoting *Hall Street*, 552 U.S. at 587) (internal citations omitted).

In considering this issue, the circuit court correctly ruled that "[m]anifest disregard for the law is not among the enumerated bases to vacate an award" under the FAA. *See Ramos-Santiago v. U.P.S.*, 524 F.3d 120, 124 n.3 (1st Cir. 2008) ("We acknowledge the Supreme Court's recent holding in *Hall Street* . . . that manifest disregard of the law is not a valid ground for vacating or modifying an arbitral award in cases brought under the Federal Arbitration Act . . . ."). Proceeding as though such a basis for review did exist for argument purposes only, the circuit court opined that the facts of this case fail to evidence any disregard of the law by the arbitrator. The specific legal concern raised by the petitioner was his contention that the arbitrator misapplied the provisions of West Virginia Code § 31B-4-408 when it decided that the petitioner's "request for information was unreasonable and improper under the circumstances." Upon its review of this matter, the circuit court ruled that it "s[aw] no factual or legal basis for overturning that finding." We concur.

While the petitioner took the view that he had a right to *all* of the company records, including the identity of its investors, the statute is not written in absolute terms.

10

Notwithstanding the initial directive of Judge Hrko that "all" records be disclosed, the statute clearly contemplates situations such as that presented in this case where a particular document request may be determined to be either unreasonable or improper under the circumstances. The statute describes two scenarios. A limited liability company is mandated to provide "[w]ithout demand, information concerning the company's business or affairs reasonably required for the proper exercise of the member's rights and performance of the member's duties under the operating agreement or this chapter." W.Va. Code § 31B-4-408(b)(1). In contrast to that obligation, a limited liability company, upon demand, shall provide "other information concerning the company's business or affairs, *except to the extent the demand or the information demanded is unreasonable or otherwise improper under the circumstances*." *Id.* at § 31B-4-408(b)(2) (emphasis supplied).

In making its ruling with regard to the petitioner's request for disclosure of the investors in Mountain Country, the arbitrator first considered why Mr. Cunningham was seeking the investor list. His stated reason was so that he could "explore whether investors received payouts of MCP income." The arbitrator found that "this information is readily ascertainable from the financial books and records of MCP, all of which have already been provided to Cunningham." Further addressing the legitimacy of the request, the arbitrator determined that the "identities of the additional investors in MCP are irrelevant to the claims and counterclaims advanced in this arbitration." Finding the request "unreasonable and

11

improper under the circumstances," the arbitrator concluded that the request was "not appropriate, as it will not further the needs of the parties and will not make discovery in this matter expeditious and cost effective." [21]

As part of its review of the arbitral award for "manifest disregard," the circuit court addressed the constrained nature of its review: "A court 'is limited to determining whether the arbitrators did the job they were told to do–not whether they did it well, *or correctly*, or reasonably, but simply whether they did it.'" (citing *Remney v. PaineWebber, Inc.*, 32 F.3d 143, 146 (4th Cir. 1994), emphasis supplied by circuit court); *accord Oxford Health Plans LLC v. Sutter*, 133 S.Ct. 2064, 2070-71 (2013) (recognizing that court may not correct even "grave error" of arbitrator and stating that arbitrator's construction of contract "holds, however good, bad, or ugly"); *Wilko*, 346 U.S. at 438 ("Congress has afforded participants in transactions subject to its legislative power an opportunity generally to secure prompt, economical and adequate solution of controversies through arbitration if the parties are willing to accept less certainty of legally correct adjustment."). The circuit court correctly recognized that the petitioner's lack of allegations of fraud or other illegal conduct effectively rendered the merits of the arbitrator's decision beyond review. *See Barber v.*

---

[21]This finding was made pursuant to Rule 11 of the CPR [Conflict Prevention & Resolution] Non-Administered Arbitration rules, which authorizes an arbitrator to "facilitate such discovery as it shall determine is appropriate in the circumstances, taking into account the needs of the parties and the desirability of making discovery expeditious and cost-effective."

*Union Carbide Corp.*, 172 W.Va. 199, 203, 304 S.E.2d 353, 357 (1983) (stating that "courts of this State will not review an arbitration award rendered pursuant to the terms of a commercial contract except for actual fraud"); *Clinton Water Ass'n v. Farmers Constr. Co.,* 163 W.Va. 85, 87, 254 S.E.2d 692, 694 (1979) ("It has long been the rule in this State that where parties have undertaken arbitration, their award is binding and may only be attacked in the courts on the basis of fraud or on those grounds set out in W. Va. Code, 55-10-4."); *see also* W.Va. Code § 55-10-25 (Supp. 2015) (permitting vacation of arbitral awards on grounds of corruption, fraud, undue means, evident partiality, and corruption or misconduct of arbitrator). As this Court stated in *Barber*, "[i]f arbitration awards can be challenged in court on any theory other than actual fraud or failure to follow the procedures that were bargained for in the arbitration clause, then the goals of speed, parsimony, and flexibility are all entirely defeated. . . ." 172 W.Va. at 203, 304 S.E.2d at 356.

The petitioner, as the circuit court noted, "cannot claim, as an end-run around the limited bases for vacatur, that an arbitrator shows 'evident partiality' or 'manifestly disregarded the law' simply because he disagrees with the decisions rendered."[22] As the circuit court sagely observed, "[s]uch a broad interpretation of 'evident partiality' or 'manifest disregard' would allow courts in every instance to review the merits of the

---

[22]The petitioner's argument with regard to "evident partiality" was that, absent partiality, the arbitrator could not have ruled against him.

13

arbitrator's decision and thereby destroy the three goals of effective arbitration." *See id.* (discussing arbitral goals of speed, parsimony, and flexibility). Recognizing the petitioner's attempt to relitigate an issue in court that was already resolved through arbitration, the circuit court properly denied the motion to vacate on grounds of manifest disregard for the law. *See Harley Miller II*, 160 W.Va. at 485, 236 S.E.2d at 446. Based on the foregoing, we hold that manifest disregard of the law is not recognized as a valid statutory basis for challenging an arbitration award made pursuant to the provisions of the Federal Arbitration Act.[23] *See* 9 U.S.C. §§ 9-10.

As a secondary basis for his challenge of the arbitral award, the petitioner argues that the arbitrator wrongly relied on hearsay evidence and failed to reopen the proceedings to permit him to submit additional evidence. Turning first to the assignment grounded in hearsay evidence, we recognize that under the rules applicable to the arbitration proceeding, the rules of evidence were not required to be followed.[24] Juxtaposed against a

---

[23]We note additionally that manifest disregard of the law is similarly not a ground for challenging an arbitration award under the Revised Uniform Arbitration Act that took effect in this state on July 1, 2015. *See* W.Va. Code § 55-10-25.

[24]Pursuant to § 12.2 of the CPR Rules for Non-Administered Arbitration:

> Testimony may be presented in written and/or oral form as the Tribunal may determine is appropriate. The Tribunal is not required to apply the rules of evidence used in judicial proceedings, provided, however, that the Tribunal shall apply the lawyer-client privilege and the work product immunity. The Tribunal shall determine the applicability of any privilege or

14

professed acknowledgment that the evidentiary rules were inapplicable is the petitioner's discordant, hyperbolic complaint that "flagrant disregard for those rules leads to fabulously unjust results." Contending that the monetary award of $113,717.50 levied against him was based upon the "rankest hearsay," the petitioner frames a test to govern the consideration of hearsay evidence during arbitration. Seeking to secure the introduction of only reliable hearsay, he suggests that we sanction hearsay evidence dependent on the status of the original speaker. By way of illustration, he theorizes that when a public official explains his actions as being consistent with what the governor instructed, then that testimony should necessarily be viewed as reliable. In other instances involving non-elected individuals who are recounting the words of mere lay people, that testimony would presumably be unreliable under the petitioner's conjectural litmus test.

Not only is the petitioner's hearsay "test" patently self-serving but it wholly conflicts with the more informal nature of arbitration proceedings. By design, an arbitration proceeding addresses a legal dispute in a fashion aimed at resolving the matter more expeditiously and less expensively than might occur in the court system. Dispensation with the formal rules of evidence and procedure is part of what enables arbitrations to advance

immunity and the admissibility, relevance, materiality and weight of the evidence offered.

in an alacritous manner by comparison to judicial proceedings. Articulating the salutary

effect of the procedural shortcuts inherent to arbitrations, this Court previously observed:

> 'The parties contract for an arbitrator, not a procedure. Due process does not necessarily mean Anglo-American rules of evidence, nor winner-take-all substantive rules. . . . The system of review of arbitration awards should be set up to avoid delay caused by the losing party in arbitration challenging the award of the arbitrators, *especially on mere procedural grounds! The strict rules governing an action at law have never been applicable to an arbitration proceeding.* The parties should know this when they agree to arbitrate, and they should not be heard later to complain on an issue of procedure. *Arbitration can, and almost inevitably does, decide the substance of the controversy with substantial justice regardless of procedure.*'

*Harley Miller II*, 160 W.Va. at 485, 236 S.E.2d at 446 (emphasis partially supplied and

internal citation omitted) (quoting *Board of Educ. v. W. Harley Miller* [*Harley Miller I*], 159

W.Va. 120, 134, 221 S.E.2d 882, 889 (1975) (Neely, J., concurring).

While the petitioner cursorily references testimony of specific witnesses that

the respondents offered at arbitration to which he now objects, the record reveals that he did

not challenge that testimony in the arbitral proceeding. Neither did he introduce his own

witnesses or evidence to refute the testimony about which he complains. In explanation, the

petitioner characterizes those decisions as tactical.[25] His prognostication that the arbitrator

would reject the respondents' evidence was a gamble that he lost.

---

[25]*See supra* note 15.

16

The petitioner specifically linked his need to reopen the arbitration proceeding to the arbitrator's reliance on hearsay evidence. The post-award request to introduce rebuttal evidence is expressly tied to his belief that the arbitrator would "disregard[] rampant hearsay testimony." Rather than avowing to discredit hearsay evidence, the arbitrator iterated: "As I said the very first day, I will take it for what it's worth and discard it if it's not relevant." The circuit court found that "the Arbitrator never stated that he would not accept or would ignore relevant hearsay testimony; 'relevance' was the only touchstone." See ARMA, S.R.O. v. BAE Sys. Overseas, Inc., 961 F.Supp.2d 245, 263 (D.D.C. 2013) ("An arbitrator has substantial leeway to admit any evidence that it finds useful–even hearsay evidence.").

Given its decision that the arbitrator's consideration of hearsay evidence was not improper, the circuit court found it unnecessary to address the petitioner's related request to reopen the hearing. Solely to address the alleged error, however, the circuit court proceeded to rule that the arbitrator had the necessary discretion to refuse the petitioner's request to reopen the proceedings. The circuit court concluded that the petitioner "was not deprived of the ability to present evidence . . . ." And "[t]o the extent Cunningham now points to his alleged illness at the final day of the hearing as a potential issue preventing

17

further testimony, he could have, but did not, seek an extension or continuance before the hearing was closed."[26]

In seeking to vacate the arbitral award by asserting such a patently procedural complaint as the need to reopen the proceeding to respond to hearsay evidence, the petitioner has relied upon improper grounds for relief.[27]  That a court may vacate an arbitrator's decision issued pursuant to the FAA "only in very unusual circumstances" is clear.  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942 (1995).  Further evident is our appreciation that the procedural grounds asserted by the petitioner in this case do not constitute the requisite "unusual circumstances."  *Id.*

## IV.  Conclusion

Based on the foregoing, the decision of the Circuit Court of Kanawha County to confirm the arbitration award and enter judgment on that award is affirmed.

Affirmed.

---

[26]The circuit court included as part of its findings:  "Cunningham has acknowledged that the decision to not seek a postponement was a 'tactical mistake' and that 'counsel would have been more astute' to do so."

[27]As the circuit court recognized, the procedural issue not to reopen the hearing after the arbitral award had been issued "is beyond the ken of this Court on review."