IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2020 Term

_____

No. 19-0905

_____

FILED
November 19, 2020
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

HOME INSPECTIONS OF VA AND WV, LLC,
Petitioner

v.

JESSE HARDIN,
Respondent

_____

Appeal from the Circuit Court of Berkeley County
The Honorable Michael Lorensen, Judge
Civil Action No. CC-02-2019-C-237

REVERSED AND REMANDED

_____

Submitted:  October 28, 2020
Filed:  November 19, 2020

Joseph L. Caltrider, Esq.             Kathy M. Santa Barbara, Esq.
Bowles Rice LLP                       The Law Office of Kathy M. Santa Barbara
Martinsburg, WV                       Martinsburg, WV
Counsel for Petitioner                Counsel for Respondent

CHIEF JUSTICE ARMSTEAD delivered the Opinion of the Court.

JUSTICE WORKMAN and JUSTICE HUTCHISON dissent and reserve the right
to file a dissenting opinion.

SYLLABUS BY THE COURT

1.  "An order denying a motion to compel arbitration is an interlocutory ruling which is subject to immediate appeal under the collateral order doctrine." Syllabus Point 1, *Credit Acceptance Corp. v. Front*, 231 W. Va. 518, 745 S.E.2d 556 (2013).

2.  "When an appeal from an order denying a motion to dismiss and to compel arbitration is properly before this Court, our review is *de novo*." Syllabus Point 1, *West Virginia CVS Pharmacy, LLC v. McDowell Pharmacy, Inc.*, 238 W. Va. 465, 796 S.E.2d 574 (2017).

3.  "The mere fact that parties do not agree to the construction of a contract does not render it ambiguous. The question as to whether a contract is ambiguous is a question of law to be determined by the court." Syllabus Point 1, *Berkeley County Public Service Dist. v. Vitro Corp.*, 152 W. Va. 252, 162 S.E.2d 189 (1968).

ARMSTEAD, Chief Justice:

This is an interlocutory appeal of a circuit court's order denying a motion to compel arbitration. Petitioner Home Inspections of VA and WV, LLC ("Home Inspections") and Respondent Jesse Hardin ("Mr. Hardin") are parties to a contract that includes an arbitration provision. After Mr. Hardin filed a civil suit against Home Inspections and others, Home Inspections moved the circuit court to dismiss the case as it relates to Home Inspections or, in the alternative, to compel arbitration. Mr. Hardin argued that the arbitration provision was ambiguous, and the circuit court agreed. However, upon consideration of the parties' briefs, the record before us, and the applicable law, we find that the arbitration provision is clear and unambiguous and thus reverse the circuit court's order and remand the case for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On or about August 17, 2017, Mr. Hardin purchased two parcels of real estate improved with several structures from William and Sharon Paxson ("The Paxsons").[1] The sales contract was contingent upon a home inspection being performed on the structures. Mr. Hardin's realtor arranged for Paul Barnhart of Home Inspections to inspect the Structures.

Mr. Hardin alleges that after the inspection was performed, he was provided with a contract to sign. Mr. Hardin admits to signing the contract. Over one year later, on

---

[1] The structures included a guest house, a detached three-car garage, and a main house.

1

or about August 6, 2018, Mr. Hardin alleges that he discovered a number of issues with his property so he telephoned petitioner to discuss his concerns about the inspection report. Following this phone call, Mr. Hardin alleges that he was provided with a copy of the inspection contract.

On June 21, 2019, Mr. Hardin filed a complaint against the Paxsons and Home Inspections alleging breach of contract, negligence and fraud.[2] On August 9, 2019, Home Inspections filed a motion to dismiss, or alternatively, a motion to stay further proceedings and compel arbitration. Specifically, Home Inspections argued that the circuit court lacked jurisdiction and that Mr. Hardin failed to state a claim under Rule 12(b)(6) of the West Virginia Rules of Civil Procedure because their contract contained an enforceable arbitration provision. The arbitration provision provides,

> ARBITRATION: Any dispute concerning the interpretation of this agreement or arising from this inspection report, except for inspection fee payment, shall be resolved informally between the parties.

In his response to this motion, Mr. Hardin argued that the disputed provision was ambiguous and "anticipates only that any disputes between the parties 'shall be resolved informally between the parties.'"

---

[2] Mr. Hardin alleges that the property contained numerous undisclosed defects, which were known or should have been known, to the Paxsons. He also alleges that Home Inspections failed to report, or "adequately report," the defects, which resulted in a breach of their contract and professional negligence.

On September 13, 2019, the circuit court entered an order denying Home Inspection's motion to compel arbitration.[3] The Court acknowledged that the provision contains a heading that reads: "ARBITRATION." However, the circuit court found the provision to be ambiguous because the sentence following the heading "ARBITRATION" required the parties to resolve certain disputes "informally." Additionally, the circuit court was critical of the provision because it did not "include terms such as how are abiters to be selected, how many arbiters will decide the issue, where arbitration will take place, by what rules and by whose authority and whether or not the arbiters grant or denial of a reward [sic] is binding or appealable."

This appeal by Home Inspections followed.

## II. STANDARD OF REVIEW

Home Inspections appeals an interlocutory order denying its motion to dismiss, or, alternatively, to compel arbitration. "Typically, interlocutory orders are not subject to this Court's appellate jurisdiction." *Credit Acceptance Corp. v. Front,* 231 W. Va. 518, 522, 745 S.E.2d 556, 560 (2013). However, this case is properly before this court because "[a]n order denying a motion to compel arbitration is an interlocutory ruling which is subject to immediate appeal under the collateral order doctrine." Syl. Pt. 1, *Credit Acceptance Corp. v. Front*, 231 W. Va. 518, 745 S.E.2d 556. "When an appeal from an

---

[3] Because the circuit court found that no enforceable agreement to arbitrate existed, it did not address the issues of lack of subject matter jurisdiction or the alleged failure of Mr. Hardin to state a claim upon which relief can be granted.

3

order denying a motion to dismiss and compel arbitration is properly before this Court, our review is *de novo*." Syl. Pt. 1, *W. Va. CVS Pharm. LLC v. McDowell Pharm., Inc.*, 238 W. Va. 465, 796 S.E.2d 574 (2017). Further, when we review contractual issues, "we apply a *de novo* standard of review to [a] circuit court's interpretation of [a] contract." *Id.* at 469, 796 S.E.2d at 578 (quoting *Finch v. Inspectech, LLC*, 229 W. Va. 147, 153, 727 S.E.2d 823, 829 (2012)).

## III. DISCUSSION

In this case, we are being asked to determine whether the arbitration agreement contained in the parties' contract is valid. The provision at issue provides:

> ARBITRATION: Any dispute concerning the interpretation of this agreement or arising from this inspection report, except one for inspection fee payment, shall be resolved informally between the parties.

Relying upon this provision, Home Inspections moved to compel arbitration under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (2002) ("FAA"). The FAA provides that arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (1947). In response, Mr. Hardin argued that the provision was ambiguous. We have previously held:

> When a lawsuit is filed implicating an arbitration agreement, and a party to the agreement seeks to resist arbitration, [this Court] has interpreted the FAA to require application of the doctrine of "severability" or "separability." The gist of the doctrine is that an arbitration clause in a larger contract must be carved out, severed from the larger contract, and examined separately. The doctrine "treats the arbitration clause as if it is

4

a separate contract from the contract containing the arbitration clause, that is, the 'container contract.'" Under the doctrine, arbitration clauses must be severed from the remainder of a contract, and must be tested separately under state contract law for validity and enforceability.

*Schumacher Homes of Circleville, Inc. v. Spencer*, 237 W. Va. 379, 387-388, 787 S.E.2d 650, 658-659 (2016) (internal citations omitted) ("*Schumacher Homes II*").

When a party moves to compel arbitration, this Court has held that "the authority of the trial court is limited to determining the threshold issues of (1) whether a valid arbitration agreement exists between the parties; and (2) whether the claims averred by the plaintiff fall within the substantive scope of that arbitration agreement." Syl. Pt. 2 (in part), *State ex rel. TD Ameritrade, Inc. v. Kaufman,* 225 W. Va. 250, 692 S.E.2d 293 (2010).[4]

The first issue – whether a valid arbitration agreement exists – is one of state law. *Brown ex rel. Brown v. Genesis Healthcare Corp.*, 228 W. Va. 646, 724 S.E.2d 250 (2011), *overruled on other grounds by Marmet Health Care Center, Inc. v. Brown,* 565 U.S. 530, 132 S. Ct. 1201, 182 L. Ed. 2d 42 (2012) ("*Brown I*"). This same issue --- 'whether a valid arbitration agreement exists'—is really two intertwined issues. First, is there an agreement? Second, if there is an agreement, is it valid (i.e., in the sense of being

---

[4] Because the circuit court erroneously determined that no valid arbitration agreement exists in this matter, it did not address the second question of whether the respondent's claims fell within the scope of the agreement, and we do not address this question on appeal. Because we remand this action for further proceedings, this question of whether the claims raised by respondent fall within the scope of the arbitration agreement should be determined by the circuit court on remand.

5

enforceable)?" *Certegy Check Serv., Inc. v. Fuller*, 241 W. Va. 701, 704, 828 S.E.2d 89, 92 (2019).

Home Inspections asserts that the circuit court erred in concluding that the arbitration provision was ambiguous. Specifically, Home Inspections challenges the circuit court's holding that "by agreeing to resolve any dispute informally," the parties did not assent to be bound by arbitration. Mr. Hardin alleges that the arbitration provision is ambiguous because the word "ARBITRATION" is followed by language that requires certain disputes to be resolved "informally between the parties." We concede that the arbitration provision could certainly have been more artfully drafted. However, this simple fact does not render it ambiguous or unenforceable.

"The mere fact that parties do not agree to the construction of a contract does not render it ambiguous. The question as to whether a contract is ambiguous is a question of law to be determined by the court." Syl. Pt. 1, *Berkeley Cty. Pub. Serv. Dist. v. Vitro Corp.*, 152 W. Va. 252, 162 S.E.2d 189 (1968). Further, this Court has acknowledged the general rule that "words in a contract will be given their usual and primary meaning at the time of the execution of the contract." *Oresta v. Romano Bros., Inc.*, 137 W. Va. 633, 644, 73 S.E.2d 622, 628 (1952).

The heading of the disputed provision contains one word – that word is ARBITRATION. Home Inspections argues that the heading is conspicuous and clearly evidences the parties' intent to arbitrate. We agree. The provision is explicitly titled "ARBITRATION." In addition to identifying the provision as the "ARBITRATION"

6

provision of the contract, the parties then agree to informally resolve certain disputes that could arise between them, except for inspection fee payment.

We are not persuaded by respondent's argument that the disputed provision contains two very contradictory terms. The provision contains a one word heading – "ARBITRATION" – which is followed by a sentence that that requires certain disputes be "resolved informally between the parties." Arbitration is an informal process. Both this Court and the Supreme Court of the United States have described arbitration as being informal. In 2011, the United States Supreme Court noted that "the principal advantage of arbitration [is] its informality. *AT&T Mobility LLC v.* Concepcion, 563 U.S. 333, 348 (2011). In *Cunningham v. LeGrand*, 237 W. Va. 68, 785 S.E.2d 265 (2016), this Court acknowledged the informal nature of arbitration when it was asked to review a circuit court's confirmation of an arbitration award and the judgment the court entered on that award. When considering petitioner's argument in *Cunningham*, we noted that the argument wholly conflicted with the "more informal nature of arbitration proceedings." *Id* at 75, 785 S.E.2d at 272.

In this case, the circuit court, however, rejected the clear equation of arbitration and informal dispute resolution present in the parties' arbitration provision. The court based that rejection, in large part, on cases from other jurisdictions analyzing arbitration provisions that made reference to informal dispute resolution. For example, in *Kramer v. Eagle Eye Home Inspections, Inc.*, cited by the circuit court, a Nebraska court of appeals held that an arbitration agreement containing the language, "it is agreed that this dispute or claim shall be resolved informally between the parties or by binding

Arbitration under the Construction Industry Arbitration Rules" of the American Arbitration Association," was unenforceable – not because it was ambiguous but because it did not comply with a Nebraska statute. *Id.*, 716 N.W.2d 749, 763 (Neb. App. 2006), *overruled by Knights of Columbus Council 3152 v. KFS BD, Inc.*, 791 N.W.2d 317 (Neb. App. 2010), *and abrogated by Tracy Broad. Corp.. v. Telemetrix, Inc.*, 17 Neb. App. 112, 756 N.W.2d 742 (Neb. App. 2008).

In *CUNA Mutual Insurance Society v. Office & Professional Employees International Union*, *Local 39,* also cited by the circuit court, the court observed that a collective bargaining agreement "require[d] several attempts at informal resolution [before] allow[ing] either party to appeal *any* grievance to arbitration if the grievance cannot be settled informally." *Id.* No. 04-138-C, 2004 WL 2713088, at *7 (W.D. Wis. Nov. 29, 2004), *aff'd in part sub nom. Cuna Mut. Ins. Soc. v. Office & Prof'l Employees Int'l Union Local 39,* 443 F.3d 556 (7th Cir. 2006). The enforceability of that arbitration agreement was not an issue in the case. Finally, in *G&G Closed Circuit Events, LLC v. Castillo,* the federal district court analyzed an arbitration provision that explicitly directed that the parties would (a) first try to resolve any disputes informally, and (b) then proceed to binding arbitration. *Id.*, No. 14-CV-02073, 2017 WL 1079241, at *3-4 (N.D. Ill. Mar. 22, 2017).

Significantly, the arbitration provisions at issue in those cases presented informal dispute resolution as either a prerequisite to arbitration or as an alternative to arbitration. The arbitration provision in this case is different. Here, the language in the provisions directly links "ARBITRATION" (as stated in the parties' agreement) to

8

informal dispute resolution. As explained above, arbitration is an informal process, a characteristic recognized by this Court and the Supreme Court of the United States. Simply put, we see nothing in the arbitration provision before us that would support the circuit court's finding that the word "ARBITRATION" and the phrase "shall be resolved informally between the parties" in that provision conflict, create an ambiguity, and render the arbitration provision unenforceable.

We are certainly aware that there are various methods of informally resolving a dispute. However, when the requirement to informally resolve a dispute is contained in a provision with the heading "ARBITRATION" and there are no other methods mentioned, the plain meaning of the provision requires the parties to arbitrate. For this reason, the sentence that follows "ARBITRATION" does not render the provision ambiguous.

Further, in concluding that the arbitration provision was not valid, the circuit court improperly based its decision, in part, on the fact that the provision "does not include terms such as how are arbiters to be selected, how many arbiters will decide the issue, where arbitration will take place, by what rules and by whose authority and whether or not the arbiters' grant or denial of a reward [sic] is binding or appealable." In fact, the circuit court indicated that "[i]f Home Inspections wanted arbitration, it had to clearly and unambiguously set forth those requirements, which would enable a court to enforce the terms of the agreement." However, the parties were not required to set forth the specific details of the arbitration process for there to be a meeting of the minds that arbitration was the method to be followed for resolving disputes. For example, neither the FAA nor the

West Virginia Legislature require that arbitration provisions contain a method for naming an arbitrator. The FAA provides:

> If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; *but if no method be provided therein*, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.

9 U.S.C. § 5 (emphasis added).

West Virginia Code § 55-10-13(a) similarly provides, *"[i]f the parties have not agreed on a method*, the agreed method fails or an arbitrator appointed fails or is unable to act and a successor has not been appointed, the court, on motion of a party to the arbitration proceeding, shall appoint the arbitrator."* W. Va. Code § 55-10-13 (emphasis added). In addressing this issue, the Seventh Circuit concluded that "[t]he fact that an agreement to arbitrate leaves for later negotiations the selection of the particular arbitrator does not render that agreement so vague as to be unenforceable. If that were the case, then section 5 of the FAA, which provides for the court to appoint an arbitrator in some circumstances, would be pointless." *Hunt v. Moore Brothers, Inc.*, 861 F.3d 655, 659 (7th Cir. 2017), *cert.* denied, 138 S. Ct. 671, 199 L. Ed.2d 534 (2018). Other courts have reached similar conclusions. *See also Robertson v. Mount Royal Towers*, 134 So. 3d 862, 868 (Ala. 2013) (explaining that, "although …the arbitration agreements do not set

forth all the procedural details of any arbitration that might result from the agreements, they do clearly evince the parties' intent to submit future disputes to arbitration," and so "look[ing] to the FAA to fill in the gaps in the arbitration agreements so as to give effect to the expectations of the parties as expressed by those agreements"); *South Alabama Pigs, LLC v. Farmer Feeders, Inc.*, 305 F. Supp. 2d 1252, 1261-62 (M.D. Ala. 2004) (enforcing an arbitration provision that did not specify a method for selecting arbitrators, state whether arbitration would be binding, or provide any details for how the arbitration would proceed). In the instant case, in view of those authorities, the circuit court was clearly wrong to base its conclusion, in part, on the failure of the disputed provision to include specific terms, including how arbitrators will be selected.

Accordingly, we find that the arbitration provision, while general in nature and lacking in specific detail regarding the arbitration process to be followed, nonetheless reflected the intent of the parties to arbitrate "[a]ny dispute concerning the interpretation of [the] agreement or arising from [the] inspection report," and was not ambiguous. Therefore, we believe the provision was an enforceable agreement to arbitrate.

## IV.  CONCLUSION

For the reasons set forth above, we reverse the September 13, 2019 order of the circuit court and remand this case for further proceedings.

Reversed and Remanded.

11